NOT DESIGNATED FOR PUBLICATION

No. 118,212

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of
C.D.F.

MEMORANDUM OPINION

Appeal from Shawnee District Court; FRANK J. YEOMAN, JR., judge. Opinion filed June 22, 2018. Affirmed.

*Lisa M. Williams*, of Williams Family Law, of Topeka, for appellant/cross-appellee stepfather.

*Milfred D. Dale*, of Law Offices of Bud Dale, of Topeka, for appellee/cross-appellant natural father.

Before BRUNS, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: W.E.R. (Stepfather) appeals the district court's dismissal of his adoption petition in which he sought to adopt C.D.F. without the consent of the child's natural father. Finding no material error in the court's decision, we affirm the dismissal. Additionally, the natural father cross-appeals from the district court's denial of attorney fees and sanctions against the stepfather, but we likewise affirm those decisions of the district court.

FACTS

In December 2008, D.O.F. (Father) and K.J.R. (Mother) were married in Arkansas. While married, the couple had a female child, C.D.F., born in July 2009. The couple divorced in August 2010 in Crawford County, Arkansas. Mother was granted residential custody of C.D.F. and Father was granted parenting time. In April 2011,

1

Mother married Stepfather. In November 2011, when C.D.F. was two years old, Mother received permission from the Arkansas court to move to Kansas with the child. A revised parenting time order was also issued.

In mid-March 2017, when C.D.F. was seven years old, Father met with Mother and Stepfather in Arkansas during his parenting time with the child. At that time, Stepfather indicated he wished to adopt C.D.F., but Father informed Stepfather that he would not consent to the adoption.

On March 28, 2017, Stepfather, represented by attorney Lisa Williams, filed a petition to adopt C.D.F. in Shawnee County District Court and claimed the consent of Father was not necessary to proceed with the adoption. Stepfather's petition identified Father as the natural father, disclosed that Father did not consent to the adoption, and stated that Father "shall be given notice, if he can be located. If he cannot be located, counsel will be appointed and notice published in his last known area of residence."

On March 30, 2017, the district court contacted attorney Milfred Dale and subsequently appointed Dale to represent Father. Dale contacted attorney Williams the same day to inquire about what she knew of Father's last known whereabouts. Williams gave Dale the petition, a copy of Father and Mother's divorce decree from Arkansas, and the address of Father's sister, where Father was believed to be residing after separating from his current wife.

Dale used the divorce decree as a basis upon which to search the Crawford County, Arkansas, website, and located Father's attorney in his current Arkansas domestic case. Dale then contacted the Arkansas attorney and gave that attorney his contact information with a request to have Father contact him. Dale indicated the process to locate and then speak to Father took approximately 45 minutes.

2

Father, with Dale's assistance, filed his answer to Stepfather's petition, in which he denied Mother did not know how to locate him and that his consent to the adoption was not necessary. Father also filed a motion to dismiss the petition for failing to allege any specific facts upon which the district court could determine his consent was not necessary for the stepparent adoption. Father attached documents from the Arkansas Child Support Clearinghouse reflecting his child support payment history, which showed that he was current on his court-ordered support. Stepfather did not file a response to Father's motion to dismiss.

At an April 13, 2017 status hearing, the district court allowed Stepfather to file an amended petition to address the deficiencies outlined in Father's motion to dismiss. In the amended petition, filed on April 17, 2017, Stepfather alleged that Father was not in arrears on his child support payments but that he failed to provide his annual tax returns to Mother so she could determine if an increase in his payments was warranted. Stepfather also claimed that Father "failed to provide more than incidental contact with the child in the two (2) years prior to the filing of the Petition." Stepfather also asserted that the child stayed with the paternal grandparents when she visited Arkansas. The amended petition contained language from the original petition that suggested Father's whereabouts were unknown but added language that indicated Father was going through a divorce and may not be residing in his marital home. Stepfather stated he was in possession of an address where he believed Father was staying but did not include any contact information for Father in the amended petition.

On May 1, 2017, Father filed an answer to the amended petition and admitted he had not previously provided his tax returns to Mother. He denied merely incidental contacts with C.D.F. and asserted he was with her daily during her visits to Arkansas. In his answer, Father also provided details regarding his scheduled parenting time. Separately, Father filed a motion to dismiss the amended petition, in which he claimed he was in compliance with the parenting time plan, and not in arrears in his child support

3

payments. Father again attached his child support payment history, as well as e-mails from Mother regarding C.D.F.'s visits to Arkansas and Mother's unilateral schedule changes reducing Father's parenting time. Again, Stepfather did not file a response to Father's motion to dismiss.

At a second status hearing on May 26, 2017, when asked by the district court if she intended to file a response to Father's motion to dismiss, Williams stated, "I don't know that I necessarily need to respond, but I certainly can." The district court set a June 1 deadline for her to file Stepfather's response to Father's motion to dismiss. Also at this hearing, Williams objected, for the first time, to Dale's appointment to represent Father. She argued that Dale should be disqualified from representing Father and that all pleadings filed by Dale were not properly before the court. The district court determined that there was no basis to disqualify Dale from representing Father.

Stepfather's response to Father's motion to dismiss was filed on the court's deadline. In his response, Stepfather alleged there was a rebuttable presumption that Father's consent to the adoption was not necessary because he failed to disclose his tax returns to Mother pursuant to the couple's divorce decree and because he "admit[ted] that he . . . ha[d] not independently made contact with the child," and the child slept at the paternal grandparents' home during her trips to Arkansas. In the response, Stepfather again suggested that Dale's appointment to represent Father was improper.

A few days later, Father filed a response to Stepfather's allegations that there was a conflict of interest in Dale's continued representation of Father. Father also made a request for attorney fees at the court-appointed rate. Stepfather did not file a reply to this pleading.

The record on appeal reveals that in the two years preceding Stepfather's petition, C.D.F. visited her Father and his family in Arkansas seven times, for a total of

4

approximately 10 weeks. The record also shows that, beginning in October 2010, Father paid child support at least biweekly through March 2017. The amount increased in January 2014, and again in July 2016. As of March 2017, Father's child support payments were $132 every two weeks, and he was never in arrears. Father worked in a factory on the night shift, from 6 p.m. to 6 a.m., and earned $11 per hour. The record on appeal fails to contain any Arkansas court orders reflecting that the court ordered more child support than Father actually paid.

On August 3, 2017, the district court issued a memorandum decision and order, granting Father's motion to dismiss. The district court found that the undisputed material facts demonstrated that Father had not failed or refused to assume his duties as a parent during the two years next preceding Stepfather's filing of the petition. The district court found Father's "consent should certainly be required for a stepparent adoption to take place, and there are no grounds on which to revoke his parental rights." The district court ordered that each party be responsible for their respective attorney fees.

Stepfather filed a timely notice of appeal from the district court's dismissal of his petition. Father also filed a timely notice of cross-appeal from the district court's order denying him attorney fees.

ANALYSIS

*The granting of Father's motion to dismiss*

As an initial matter in his appeal, Stepfather contends that the district court improperly sustained Father's motion to dismiss without first conducting an evidentiary hearing. He appears to rely solely on K.S.A. 59-2134(a), which states:  "Upon the hearing of the petition, the court shall consider the assessment and all evidence." Stepfather argues the district court erroneously interpreted that statute because the court granted

Father's motion to dismiss based solely on the pleadings. Accordingly, Stepfather asserts a remand is necessary for an evidentiary hearing.

In response, Father essentially argues that the rules of civil procedure allowed for him to file his motion to dismiss and for the district court to consider and rule upon the motion challenging the sufficiency of the petition prior to conducting an evidentiary hearing. Father's argument is persuasive.

The rules of civil procedure are statutory and govern procedures in all civil actions and proceedings (other than limited actions) in the district courts of Kansas. K.S.A. 2017 Supp. 60-201(b). Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016).

"There is one form of action, the civil action." K.S.A. 2017 Supp. 60-202. After the pleadings are closed, a party may move for judgment on the pleadings. K.S.A. 2017 Supp. 60-212(c). Here, Father filed his motion to dismiss Stepfather's petition to adopt C.D.F. at the same time he filed his answer to Stepfather's petition. Stepfather does not cite any authority to support his contention that the available tools of civil procedure do not apply to adoption proceedings in district court. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015). An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

Further, Stepfather argues that the district court "moved *sua sponte* to sustain the Petition to Dismiss." This action, according to Stepfather, denied him due process and constituted an abuse of discretion. This is a puzzling contention, and Stepfather neither explains how the district court denied him due process nor how the district court abused its discretion in ruling on Father's motion to dismiss. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

Thus Stepfather's objection on these procedural grounds lacks merit. We hold the district court did not err in considering and ruling on Father's motion to dismiss prior to conducting an evidentiary hearing.

Stepfather's next challenge suggests that the district court committed error by granting Father's motion to dismiss the amended petition. He contends that the district court erred in its interpretation of the Kansas Adoption and Relinquishment Act (KARA), K.S.A. 59-2111 et seq., when it determined Father's consent was necessary to accomplish the stepparent adoption of C.D.F. Stepfather argues the district court's findings of fact were based solely on the assertions contained in Father's counsel's arguments. He further argues that an evidentiary hearing on his amended petition was necessary for the district court to adequately consider all of the circumstances regarding whether Father failed or refused to assume his parental duties. In response, Father contends that the district court appropriately granted his motion to dismiss the amended petition because Stepfather failed to allege facts upon which relief could be granted under the stepparent adoption statute.

Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review. We must view the well-pleaded facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state *any* claim

7

upon which relief can be granted, then dismissal is improper. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013); see K.S.A. 2017 Supp. 60-212. We have the duty of determining whether the facts and inferences support a claim "'not only on the theory which may be espoused by the plaintiffs, but on *any possible theory* we can divine.'" *312 Education Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 882, 47 P.3d 383 (2002) (quoting *Noel v. Pizza Hut, Inc.*, 15 Kan. App. 2d 225, 231, 805 P.2d 1244 [1991]); see *Grey v. City of Topeka*, No. 117,652, 2018 WL 1352506, at *3 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* April 12, 2018.

Interpretation of a statute is likewise a question of law over which appellate courts have unlimited review. *Neighbor*, 301 Kan. at 918. Adoption statutes are strictly interpreted in favor of maintaining the rights of the natural parents where the statute is being used to terminate the right of a natural parent without consent. *In re Adoption of Baby Girl P.*, 291 Kan. 424, 430, 242 P.3d 1168 (2010); *In re A.S.*, 52 Kan. App. 2d 173, 177-78, 364 P.3d 1203 (2015). The party seeking to terminate a parent's rights has the burden of proving by clear and convincing evidence that termination is appropriate under K.S.A. 2017 Supp. 59-2136. *In re Adoption of Baby Girl P.*, 291 Kan. at 430.

A petition for adoption requires a statement of "the facts relied upon as eliminating the necessity for the consent, if the consent of either or both parents is not obtained." K.S.A. 59-2128(a)(10). As we have noted, the record on appeal reveals that Father refused to consent to the adoption at an in-person meeting with Stepfather in March 2017, shortly before Stepfather filed his petition for adoption. However, Stepfather's original petition alleged only that Father's parental rights would be terminated under K.S.A. 2017 Supp. 59-2136(d) and (h), and it contained no factual statements to support its legal conclusion.

Pursuant to K.S.A. 2017 Supp. 59-2136(d), consent of the natural father is required in a stepparent adoption unless "such father has failed or refused to assume the

8

duties of a parent for two consecutive years next preceding the filing of the petition for adoption." In determining whether consent is required, a court may disregard incidental visitations, contacts, communications, or contributions. Further, if a father has knowingly failed to provide a substantial portion of the child support *as required by judicial decree* for a period of two years next preceding the filing petition for adoption, there is a rebuttable presumption that the father has failed or refused to assume his duties as a parent. K.S.A. 2017 Supp. 59-2136(d).

Stepfather's petition neither alleged that Father's contacts with the child were merely incidental, nor that Father knowingly failed to pay child support pursuant to a judicial decree. Notably, Stepfather attached to his petition for adoption a letter in which he described his reasons for wanting to adopt C.D.F. These reasons likewise did not allege that Father failed to substantially support the child or that Father had only incidental contacts with the child. In his April 2017 answer, Father denied that subparagraph (d) could be used to terminate his rights. Father also denied that subparagraph (h) applied to stepparent adoptions.

With his answer, Father filed a motion to dismiss Stepfather's petition, stating: "Petitioner's pleading fails to allege any facts upon which the court or Father might understand any claim that Father's consent to the adoption is unnecessary for a step-parent adoption of [C.D.F.], his natural daughter." Because K.S.A. 2017 Supp. 59-2136(d) addresses financial support for, and the nature of a father's contacts with, a child, Father also stated that he had emotionally and financially supported C.D.F. throughout her life. In the motion to dismiss, Father provided details to support his claims regarding his relationship and parenting time with C.D.F., and attached documentation to demonstrate his history of timely child support payments from October 2010 through March 2017. Father requested that the district court dismiss the petition "for failure to appropriately support the petition with any facts upon which Petitioner can support his

claim that Father's consent to the adoption is unnecessary." Stepfather did not file a response to Father's motion to dismiss.

At the first status hearing, Stepfather, through attorney Williams, contended that Father was ordered by the divorce decree to provide his annual tax returns to Mother, but he had not done so. Without such information, Williams asserted, "[W]e don't know that [Father] has been providing all of the child support that *would be ordered* by the Court had he been doing as was ordered of him." (Emphasis added.) Williams also claimed that C.D.F. stayed with her paternal grandparents when visiting Father out of state, and Father had "no other substantive contacts with the child outside the facilitation of his parents." Dale, Father's attorney, noted that Stepfather did not allege Father had not fulfilled his parental duties. Dale offered that the child initially stayed with the paternal grandparents *at Mother's request* but that Father was regularly with the child when he was not at work. Since Father's factory work was during a night shift, he was able to spend daytime hours with his child.

The district judge asked if there was a separate petition setting out the reasons for termination of parental rights. Williams indicated there was not. The judge stated, "Okay. So, we have nothing telling me, or anyone, to say why—what the basis would be for terminating [Father's] parental rights. It just cites a statute." Williams responded that her understanding of notice pleading involved notification of general issues without alleging detailed facts: "[S]hould [Father] contest, we would be able to provide more detailed facts and/or evidence to support a termination of his parental rights." The district judge disagreed: "There has to be, at least, a generic statement of what the facts would show. And . . . all I get out of this [petition] is the general statute that would be relied on and that this guy is a possibly missing father."

Williams requested leave to amend the petition, which was granted. The judge instructed, "[Y]ou need to have a petition . . . asking to terminate parental rights and say

10

why. What facts it is that you are alleging . . . . [A] person is entitled to know what they're defending." See *In re Estate of Wolf*, 279 Kan. 718, Syl. ¶ 3, 112 P.3d 94 (2005) (general pleading statutes in civil procedure code do not override more specific pleading provisions in probate code). The judge informed the parties that after he received the amended petition, he would "then know whether I'm going to just schedule a hearing on the motion to dismiss, or whether we are simply going to go ahead and schedule the case for trial."

In Stepfather's amended petition, he alleged Father had not provided Mother with his annual income tax returns as ordered after the couple's divorce:

> "The natural father is not now in arrears on his child support obligation, however, because of his failure to annually inform the mother of his income, this failure to disclose gives the mother and [Stepfather] reason to believe that the natural father has not been providing a substantial portion of the child support as required by judicial decree when financially able to do so."

The amended petition also alleged that C.D.F. stayed with the paternal grandmother during visits out of state, and that this arrangement was only required by the divorce decree through the end of 2010. Stepfather claimed Father "failed to provide more than incidental contact with the child." Finally, the amended petition alleged Father had not provided cards, gifts, or letters to C.D.F. since she moved to Kansas.

In Father's timely answer to the amended petition, he admitted Stepfather's allegation that he was current on his court-ordered child support payments but acknowledged that he had not previously provided Mother with his income tax returns. He provided additional details and information to deny and refute the characterization of his contacts with C.D.F. as incidental and asserted his parenting time with the child was in accordance with the parenting plan agreement. Father attached two e-mails sent from Mother to the paternal grandmother regarding the parenting time plan. In the e-mail from

11

2011, Mother stated: "With [Father] working every other weekend, visitation will now be as follows: [T]his follows the standard order we have now. No arguments. No additional time is going to be agreed upon because, well . . . I don't agree." The e-mail from 2013 reflected that Mother reduced Father's parenting time from 12 weeks to 7 weeks per year.

Father's motion to dismiss Stepfather's amended petition contended that Stepfather's amended petition "fails to allege sufficient facts upon which the court might allow for [C.D.F.] to be adopted by [Stepfather] without Father's consent." Father again attached his child support payment history from October 2010 through March 2017. Father requested that the district court dismiss Stepfather's amended petition "for failure to appropriately support [his] petition with any facts upon which [Stepfather] can support his claim that Father's consent to the adoption is unnecessary." Again, Stepfather did not file a response to Father's motion to dismiss the amended petition.

At a second status hearing, Williams acknowledged receipt of Father's tax returns. She also indicated she needed additional time for discovery to gather her client's records regarding expenses for the child in order to determine whether Father paid anything additional for the child's care, and to request Father's telephone records to determine the frequency of his calls with C.D.F. Dale addressed the motion to dismiss and argued that the child support order from Arkansas was presumptively reasonable and that Father consistently paid his child support. Williams acknowledged she had not filed a response to Father's motion to dismiss the amended petition: "I don't know that I necessarily need to respond, but I certainly can." The district court established a deadline of June 1, 2017, for Stepfather to file his response. The district judge informed the parties that he would review the pleadings and further advise the parties if he intended to make a ruling on those pleadings or needed to schedule yet another hearing. A status conference was scheduled for August 4, 2017.

12

In Stepfather's response to Father's motion to dismiss, he claimed that Father's answer to the amended petition "listed general defenses . . . that are conclusory, lacking a short and plain statement of facts showing [Father] is entitled to relief." Stepfather addressed the issues in the motion to dismiss by quoting K.S.A. 2017 Supp. 59-2136(d) and suggested that there was a rebuttable presumption that Father had failed or refused to assume his duties as a parent. Stepfather contended that Father failed in his obligation to pay child support because he had not disclosed his alleged increase in earnings to Mother for the purposes of child support modification as required in the couple's divorce decree. Defining incidental contacts, Stepfather contended that Father admitted to failing to make independent contact with C.D.F. despite having her contact information and noted that Father did not have a room for the child at his home.

A few days after Stepfather's response, Father filed a reply in support of his motion to dismiss. In this reply, Father noted that Stepfather did not deny that Father and Mother were following child support and parenting agreements made as part of their previous court case. Father argued that if a responsive pleading does not deny allegations, those allegations are admitted. Consequently, Stepfather's response to the motion to dismiss should be interpreted as admitting Father's contentions regarding child support and his parenting time. Father argued that Stepfather never pled "facts or circumstances sufficient to prove a prima facie case that [Father's] consent was not necessary to the step-parent adoption."

On August 3, 2017, the district court issued a memorandum decision and order granting Father's motion to dismiss the amended petition. The district court determined that the "critical factors" in the case were child support and the parent-child relationship between Father and C.D.F. The district court found that Father paid his child support in accordance with a court order and that Father had regular contact with C.D.F., "within the bounds that the Court having jurisdiction set for them and within the bounds generally suitable to parents living in separate states." In the context of all the surrounding

13

circumstances, the district court determined that these facts were neither substantially disputed by Stepfather, nor subject to different findings upon presentation of evidence. The district court determined that Father's "consent should certainly be required for a stepparent adoption to take place, and there are no grounds on which to revoke his parental rights."

On appeal, Stepfather broadly suggests that the facts alleged in the amended petition, when viewed in the light most favorable to him, are sufficient to require a denial of Father's motion to dismiss. Stepfather argues that an evidentiary hearing on the petition would support the presumption that Father failed to assume the duties of a parent.

However, the facts Stepfather included in his amended petition do not trigger the rebuttable presumption that Father failed or refused to assume his duties as a parent under K.S.A. 2017 Supp. 59-2136(d). Stepfather acknowledged that Father is not in arrears on his court-ordered child support payments, and the other allegations do not claim that Father is out of compliance with the parenting time schedule agreed upon by the natural parents. Even if the facts as alleged in the amended petition are true, neither they nor any reasonable inferences drawn from them support Stepfather's contention that Father failed or refused to assume the duties of a parent, rendering his consent to the stepparent adoption of C.D.F. unnecessary. At most, the allegations suggest Mother had a foundation to petition the Arkansas court to order Father to provide her with his tax returns. See *Cohen*, 296 Kan. at 545-46.

There is another procedural aspect to this case that we need to recognize. We note that Stepfather attached documents to his petition and Father attached documents to his answers and motions to dismiss. If matters outside the pleadings are presented and not excluded by the court, a motion under K.S.A. 2017 Supp. 60-212(b)(6) or (c) must be treated as one for summary judgment under K.S.A. 2017 Supp. 60-256, and all parties

14

must be given a reasonable opportunity to present all the material that is pertinent to the motion. K.S.A. 2017 Supp. 60-212(d).

"'The important distinction between the handling of a motion to dismiss on the one hand and a motion for summary judgment on the other is that in the former the trial court is limited to a review of the pleadings, while in the latter, *the trial court takes into consideration all of the facts disclosed during the discovery process*—affidavits, depositions, admissions, and answers to interrogatories. Thus, a party opposing a motion for summary judgment may point to or provide depositions, affidavits, or other documents to demonstrate that there are genuine issues of material fact, necessitating a trial.' (Emphasis added.) [Citation omitted.]" *Keiswetter v. State*, 304 Kan. 362, 367-68, 373 P.3d 803 (2016).

A motion to dismiss, however, is typically filed early in the case when many of the facts have not yet been discovered and the legal theories may be in flux. *ARY Jewelers v. Krigel*, 277 Kan. 27, 38, 82 P.3d 460 (2003).

Our review of the record in this case convinces us that the lack of a factual dispute as to the key elements and documents in this case requires that Father's motion to dismiss the amended petition should be treated as a summary judgment motion as required by K.S.A. 2017 Supp. 60-212(d). Under the law, we must review the district court's denial of a motion for summary judgment de novo, viewing the facts in the light most favorable to the party opposing summary judgment. "If 'reasonable minds could differ as to the conclusions drawn from the evidence'—in other words, if there is a genuine issue about a material fact—summary judgment should be denied.' [Citation omitted.]" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015). An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services*

*Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013); *Sanchez v. U.S.D. No. 469*, 50 Kan. App. 2d 1185, 1192, 339 P.3d 399 (2014). Where the controlling facts are based on written or documentary evidence from pleadings, admissions, depositions, and stipulations, an appellate court is in as good a position as the district court to examine and consider the evidence and to determine what the facts establish as a matter of law. *Weber v. Board of Marshall County Comm'rs*, 289 Kan. 1166, 1175-76, 221 P.3d 1094 (2009).

While Stepfather does not argue that the district court should have denied Father's motion to dismiss due to the need for additional discovery, Stepfather contends that an evidentiary hearing "would have supported the presumption that [Father] failed to assume the duties of a parent for the two years prior to the filing of the petition." But the only evidence purported to be outstanding, i.e., not attached to the pleadings, were Stepfather's financial records and Father's telephone records. Williams requested time for additional discovery at the second status hearing in order to gather this information. The district court has the discretion to deny a motion for summary judgment when discovery is needed. K.S.A. 2017 Supp. 60-256(f). As a general rule, summary judgment in a pending case should not be granted until discovery is complete. However, if the facts pertinent to the material issues are not disputed, summary judgment may be appropriate even when discovery is unfinished. *Northern Natural Gas Co.*, 296 Kan. at 935.

The record reflects that Williams wanted her client's financial records to calculate expenses related to C.D.F.'s care dating back to 2010, and to determine if Father had paid anything additional for her care. Williams also wanted to gather Father's telephone records to establish the number of times he spoke to C.D.F. on the phone. However, neither category of evidence would have served to refute the evidence attached to the pleadings that reflected Father's consistent child support payments, or affect Father's acknowledgment that he had few telephone calls with C.D.F.

Additionally, Williams did not believe filing a response to Father's motion to dismiss the amended petition was necessary. Nevertheless, the district court gave Stepfather additional time to provide a response to Father's motion. See K.S.A. 2017 Supp. 60-212(d); K.S.A. 2017 Supp. 60-256(c)(1)(B). Stepfather's response provided no new arguments or evidence but simply reiterated his claims that Father's failure to provide tax returns equated to a failure to substantially pay child support and his contacts with the child were incidental. Stepfather did not allege that Father failed to adhere to any court order regarding the amount of child support to pay or that Father was not in compliance with the agreed-upon parenting plan.

Although the district court did not refer to Father's motion to dismiss as a motion for summary judgment, the district court treated it as one. The district court ensured Stepfather had additional time to respond to Father's motion and provide any information he felt was pertinent to the motion. Upon review of all of the documents and pleadings, the district court determined there was no genuine issue of material fact, and that the presentation of evidence would not result in different findings. See K.S.A. 2017 Supp. 60-256(e)(2).

Whether framed as a motion to dismiss or a motion for summary judgment, the record on appeal supports the district court's finding that there were no genuine issues of material fact such that reasonable minds could differ as to the conclusions drawn from the evidence. Even viewed in the light most favorable to Stepfather, the evidence shows Father substantially provided support for the child in accordance with the Arkansas judicial decree and Father was also in compliance with the agreed-upon parenting time plan. This amply justified the district court's decision to grant Father's motion to dismiss Stepfather's amended petition. We find no abuse of discretion in the district court's order.

17

*Appointment of counsel for Father*

As his second issue on appeal, Stepfather contends that the district court improperly appointed counsel for Father when Stepfather had not yet attempted to locate and serve process to the natural father. Stepfather argues that he did not request counsel be appointed to find the natural father because he knew Father's home address and telephone number. In response, Father argues that the district court's appointment of his attorney was proper based on the facts of this case. Stepfather also suggests that once Father was located and served with process, appointed counsel was no longer warranted under the adoption statutes absent a finding that Father was indigent.

Stepfather's confusing arguments invoke two standards of review. To the extent Stepfather is questioning the proper interpretation of applicable statutes, the standard of review is unlimited as statutory interpretation is a question of law. *Neighbor*, 301 Kan. at 918.

However, to the extent Stepfather contends the district court should have disqualified Dale from his continuing representation of Father, a different standard applies. The standard of review for attorney disqualification is a two-part test. An appellate court determines whether the district court's findings of fact are: (1) supported by substantial competent evidence and (2) sufficient to support the conclusions of law. An appellate court's review of conclusions of law is unlimited. *Barragree v. Tri-County Electric Co-op., Inc.*, 263 Kan. 446, 454-55, 950 P.2d 1351 (1997). "Substantial competent evidence is '"evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can be reasonably be resolved."'" [Citations omitted.]" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015).

We will first deal with Stepfather's contention that the appointment of counsel for Father by the district court was invalid *ab initio* under KARA. A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to make decisions regarding the care, custody, and control of the parent's child. Before a parent can be deprived of the right to the custody, care, and control of the child, the parent is entitled to due process of law. *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008); see also *In re X.D.*, 51 Kan. App. 2d 71, 73-74, 340 P.3d 1230 (2014) (right to be legal parent of child is fundamental right).

A petition for adoption under KARA requires a statement of information "*if reasonably ascertainable*," as to "whether one or both parents are living and the name, date of birth, *residence and address* of those living, *so far as known to the petitioner*." (Emphasis added.) K.S.A. 59-2128(a)(9); see also *In re Estate of Wolf*, 279 Kan. 718, Syl. ¶ 3. Stepfather's petition stated in relevant part:  "The natural father of the child is [D.O.F.]. The natural father has not consented, but shall be given notice, *if he can be located*. If he cannot be located, counsel will be appointed and notice published in his last known area of residence." (Emphasis added.)

In stepparent adoptions, "the court may appoint an attorney to represent any father . . . whose whereabouts are unknown." K.S.A. 2017 Supp. 59-2136(c). Two days after Stepfather filed his petition for adoption, the district court contacted Dale inquiring about his ability to represent Father, who was identified in Stepfather's pleadings as a father whose whereabouts were unknown, as appointed counsel. Dale accepted the appointment. He located Father in approximately 45 minutes, spoke to him on the telephone, and Dale informed Father he had been appointed to represent him in the stepparent adoption case. Dale informed the district court he located Father, and filed a limited scope entry of appearance (limited to the Kansas adoption case) the next day.

19

On appeal, Stepfather notes the discretionary language in K.S.A. 2017 Supp. 59-2136(c), i.e., the court "may appoint an attorney" for a natural parent who is unknown or whose whereabouts are unknown. But he does not argue that the district court abused its discretion in actually appointing counsel to represent Father. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman*, 296 Kan. at 645.

Instead of claiming abuse of discretion, Stepfather argues that the "provisions of K.S.A. 59-2136(c) provide that counsel may be appointed for an unknown or unfound father *to do a specific set of tasks*." (Emphasis added.) This is a misstatement of the statute. Father argues on appeal that none of the statutes or court rules applicable to appointed attorneys for missing fathers limits the scope or duration of representation. We agree with Father's interpretation of the statute.

A plain reading of the statute reveals it to be unambiguous. Subparagraph (c) places no limits on the scope of representation after the appointment. Again, the court may appoint an attorney to represent any father whose whereabouts are unknown. K.S.A. 2017 Supp. 59-2136(c). The statute does not prescribe a set of tasks, limit the scope of representation, or require that representation cease upon locating a natural father.

Next, Stepfather contends on appeal that even if Dale's appointment to represent Father was initially appropriate under subparagraph (c), once Dale located Father, the appointment could only continue if the district court made a finding that Father was indigent pursuant to K.S.A. 2017 Supp. 59-2136(h)(1). Williams objected to Dale's continued representation of Father at the second status hearing and argued that any pleadings filed by Dale were not properly before the district court.

"A court deciding a motion to disqualify counsel must balance several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on the parties

20

and the entire judicial process." *Lansing-Delaware Water District v. Oak Lane Park, Inc.*, 248 Kan. 563, 571, 808 P.2d 1369 (1991).

> """Motions to disqualify 'should be reviewed with extreme caution for they can be misused as a technique of harassment.'" "Such motions are often simply "'common tools of the litigation process, . . . used . . . for purely strategic purposes."'" "The right to be represented by counsel of choice is an important one, subject to override only upon a showing of compelling circumstances." [Citations omitted.]'" *Barragree*, 263 Kan. at 455 (citing *Lease-America Corp. v. Stewart*, 19 Kan. App. 2d 740, 750, 876 P.2d 184 [1994]).

During that status hearing, the district court and the parties engaged in some discussion about the interplay of subparagraphs (c) and (h) respecting appointed counsel. In response to the district court's question, Dale indicated that although Father made $11 per hour at his factory job, Father did not claim to be indigent. The district court allowed Dale to call Father to determine whether he wanted Dale to continue representing him if Dale were no longer court-appointed. Dale represented to the district court that Father was willing to retain him. The district court found that there was no basis for excluding Dale from representing Father.

Stepfather contends that Dale was appointed pursuant to K.S.A. 2017 Supp. 59-2136(c) and "charged with locating and providing notice *only*." In support of this contention, Stepfather cites to a 2016 practitioner's guide to Kansas family law but cites no other authority and acknowledges there is no caselaw in support of this argument. However, a more recently published practitioner's guide indicates that an appointed lawyer's role is to make sure "due diligence has been made to locate the birth father and to review the adequacy of notice." It also states: "If the father is found, the lawyer may assert his parental interest." 1 Elrod, Kansas Law and Practice: Kansas Family Law § 6:7 (2017-2018 ed.).

21

Stepfather cites to K.S.A. 2017 Supp. 59-2136(f), regarding notice and proof of notice, to signal what should be the end to court-appointed representation. Again, Stepfather cites to no authority in support of this position. However, that statute merely requires that service on any and all known possible fathers must be served and filed with the court; it makes no mention of a connection between the service of notice and the appointment, or continued appointment, of counsel. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *University of Kan. Hosp. Auth.*, 301 Kan. at 1001.

Contrary to Stepfather's argument, caselaw regarding stepparent adoptions suggests that a finding of financial need is not required for a father to continue with representation that was court-appointed pursuant to K.S.A. 2017 Supp. 59-2136(c). Subparagraph (h) was determined to be inapplicable to stepparent adoption proceedings:

"[T]he termination of parental rights provisions in K.S.A. 2010 Supp. 59-2136(h) simply do not apply to the question of whether a natural father must consent to the adoption of his children by a stepfather. The legislature intended for that question to be answered by the provisions of K.S.A. 2010 Supp. 59-2136(d), unaffected by the provisions governing the termination of parental rights in other types of adoptions." *In re Adoption of J.M.D.*, 293 Kan. 153, 163, 260 P.3d 1196 (2011).

The termination of parental rights provisions under subparagraph (h)(1) is also where the language regarding a father's financial inability to employ an attorney is located. K.S.A. 2017 Supp. 59-2136(h)(1). Consequently, since subparagraph (h) does not apply in stepparent adoptions, under *In re Adoption of J.M.D.*, the statutes do not require a district court to assess a found father's financial ability to employ an attorney in order to continue court-appointed representation initially accomplished pursuant to K.S.A. 2017 Supp. 59-2136(c). Nevertheless, in this case, the district court did inquire about Father's financial circumstances. While Dale indicated Father was not indigent, he informed the court of

22

Father's relatively low hourly wage but also that Father was willing to retain him if necessary. Thus Dale's representation of Father was legitimately ongoing, even if the appointment or retention issue was not resolved prior to the district court granting Father's motion to dismiss.

Based on Stepfather's petition, we find there was sufficient competent evidence to justify the district court's appointment of representation for Father pursuant to K.S.A. 2017 Supp. 59-2136(c). Stepfather has failed to show compelling circumstances to override Father's choice of representation in this case. While Dale was initially court-appointed, the privacy of the attorney-client relationship, the prerogative of Father to choose to continue with Dale as his attorney, and the hardships that Dale's disqualification would impose on Father as an out-of-state litigant at risk of losing his parental rights supports the district court's findings that there was no basis to disqualify Dale from representing Father in this case.

We note that Stepfather has failed to cite to any of the Model Rules of Professional Conduct that would mandate Dale's removal from the case. He does not assert that Dale's representation of Father creates a conflict of interest with Dale's other current clients as prohibited by Rule 1.7 (2018 Kan. S. Ct. R. 302) or 1.8 (2018 Kan. S. Ct. R. 309). Nor is there any assertion that Dale's representation of Father violates any duty Dale may owe to former clients implicated by Rule 1.9 (2018 Kan. S. Ct. R. 315).

Finally, even if the initial appointment was in error, it was an error invited by Stepfather's petition in which he suggested that Father's whereabouts were unknown. Whether the doctrine of invited error applies presents a question of law, and appellate courts generally exercise unlimited review over questions of law. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016). Generally, when a party has invited error, the error cannot be complained of on appeal. See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203, 308 P.3d 1238 (2013).

We find no error in the district court's appointment of representation for Father or in its refusal to disqualify Dale as Father's counsel.

*The district court's refusal to award attorney fees*

Father has cross-appealed from the district court's decision that each party should be responsible for their own attorney fees. He argues that the district court abused its discretion in failing to award him attorney fees. Stepfather contends that the district court did not abuse its discretion by assessing attorney fees to the respective parties.

The district court's authority to award attorney fees is a question of law over which appellate review is unlimited. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013); see *In re Marriage of Williams*, 52 Kan. App. 2d 440, 452, 367 P.3d 1267 (2016). A court may not award attorney fees absent statutory authority or an agreement by the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013); *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 219, 364 P.3d 1206 (2015). Where the district court has authority to grant attorney fees, its decision whether to award fees is reviewed under the abuse of discretion standard. *Wiles*, 302 Kan. at 81; *Rinehart*, 297 Kan. at 942. A judicial action constitutes an abuse of discretion if: (1) no reasonable person would take the view adopted by the district court, (2) is based on an error of law, or (3) is based on an error of fact. *Wiles*, 302 Kan. at 81. The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co.*, 296 Kan. at 935.

Father requested attorney fees in each pleading filed with the district court. As the case progressed, Father also requested sanctions in the form of attorney fees "because of the manner in which [Stepfather's] signed pleadings were made." The district court did not make any findings regarding Father's requests, but stated in the memorandum decision and order: "Concerning attorney fees I find no specific authority requiring the

24

assessment of attorney fees so it is the Court's judgment that each party is responsible for his own attorney fees."

In this case, Father first contends that the district court had the discretion to award attorney fees pursuant to KARA, specifically K.S.A. 59-2134(c) and K.S.A. 2017 Supp. 59-104(d). "The costs of the adoption proceedings shall be paid by the petitioner or as assessed by the court." K.S.A. 59-2134(c). Attorney fees are specified as an additional court cost subject to be taxed or billed against the parties as directed by the court. K.S.A. 2017 Supp. 59-104(d). Father argues that the district court's refusal to award him attorney fees in this case was unreasonable and an abuse of discretion. Father requests attorney fees at the court-appointed rate pursuant to these two statutes.

In response, Stepfather suggests that because the district court did not find Father to be "at least partially indigent," it did not abuse its discretion in assigning the parties to pay their respective attorney fees. The record on appeal reveals that Dale indicated Father was not indigent, and the district court did not make a finding that Father was indigent for the purpose of continuing Dale's appointment as Father's attorney under K.S.A. 2017 Supp. 59-2136(h). However, the matter was not resolved.

Following the second status hearing, restrictions regarding the court-appointed representation issue were left open to be reviewed. The district court did not conduct any other hearings or issue any other orders in this case until filing the August 2017 memorandum decision and order granting Father's motion to dismiss. There is nothing in the record to indicate the district court relieved Dale of his court appointment to represent Father.

Father cites to the procedural history and undisputed facts of this case in support of his argument that the district court abused its discretion in not awarding him attorney fees. Father acknowledges there is substantial overlap with his claim for attorney fees as

25

a sanction under K.S.A. 2017 Supp. 60-211, and we think the better practice is to address his claim under that statute.

Father also argues that sanctions in the form of attorney fees are appropriate in this case under K.S.A. 2017 Supp. 60-211. K.S.A. 2017 Supp. 60-211(c) provides that a court may impose an appropriate sanction, such as attorney fees, on an attorney or party that violated subparagraph (b). Subparagraph (b) provides:

"By presenting to the court a pleading, written motion or other paper, whether by signing, filing, submitting or later advocating it, an attorney . . . certifies that to the best of the person's knowledge, information and belief formed after an inquiry reasonable under the circumstances:

"(1) It is not being presented . . . for any improper purpose . . . ;

"(2) the claims, defenses and other legal contentions are warranted by existing law or by a non-frivolous argument . . . ;

"(3) the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

"(4) the denials of factual contentions are warranted on the evidence or . . . are reasonably based on belief or a lack of information." K.S.A. 2017 Supp. 60-211(b)(1)-(4).

Father contends that Stepfather and Williams violated all four subsections of subparagraph (b) and so the district court's refusal to award sanctions in the form of attorney fees was unreasonable and a further abuse of discretion.

Courts should take the following factors into consideration when determining whether to sanction a party under K.S.A. 60-211 and what kind of sanction to impose:

"(1) whether the improper conduct was willful or negligent;

"(2) whether it was part of a pattern of activity or an isolated event;

26

"(3) whether it infected the entire pleading or only one particular count or defense;

"(4) whether the person has engaged in similar conduct in other litigation;

"(5) whether it was intended to injure;

"(6) what effect it had on the litigation process in time or expense;

"(7) whether the responsible person is trained in the law;

"(8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and

"(9) what amount is needed to deter similar activity by other litigants. [Citation omitted.]" *Wood v. Groh*, 269 Kan. 420, 431, 7 P.3d 1163 (2000).

In this case, the district court did not make any findings regarding Father's requests for attorney fees, whether as a sanction under K.S.A. 2017 Supp. 60-211, or otherwise. Although Father consistently requested and argued for attorney fees throughout the course of the case, the district court simply stated that relevant authority did not require it to grant them.

Although the district court's virtual dismissal of Father's request for attorney fees as a sanction under K.S.A. 2017 Supp. 60-211 might be inconsistent with its tone and observations throughout the case, we do not view this as automatically entitling Father to sanctions in the form of attorney fees. The record on appeal reveals that there was no request to the district court for specific findings as to the application of K.S.A. 2017 Supp. 60-211 to the proceedings or for findings in light of the *Wood* factors. "In the absence of a request by a party to the district court for additional findings, though, we generally assume that the court made the findings necessary to support its ruling." *Douglas Landscape & Design v. Miles*, 51 Kan. App. 2d 779, 787, 355 P.3d 700 (2015).

In the context of this case, although it is a close call, we believe we cannot substitute our judgment and order attorney fees under K.S.A. 2017 Supp. 60-211 without the careful first-hand observation of the proceedings and application of the *Wood* factors which can only be done at the district court level. Because of this we are disinclined to

27

enter the fray and start making findings of our own. The bottom line is that we cannot conclude the district court abused its discretion, particularly since Father could have sought particularized findings from the district court on his sanction issues.

We are sympathetic to the plight of attorney Dale in seeking reasonable compensation for his representation which was performed, after all, at the behest of the district court. But since the matter of whether Dale was appointed or retained counsel was in limbo at the time Stepfather's amended petition was dismissed, we conclude we are not in a position to second-guess how and how much he should be paid for his services. At the very least, we think that Dale is entitled to be compensated under the standard terms for court-appointed counsel in similar cases within the judicial district, at least up to the time when Father indicated he was willing and able to retain Dale. In our view, this is a matter which Dale should address directly with the presiding judge in this case or the chief judge of the judicial district.

Affirmed.