(96 P.3d 1110)
No. 91,225

In the Matter of the Estate of FRANCIS J. WOLF, JR., a/k/a FRANCIS J. WOLF, Deceased.

 Opinion filed
September 3, 2004. 

*John M. McFarland,* of Kutak Rock, LLP, of Kansas City, Missouri, and *David L. Higgins,* of Higgins, Lysaught, Tomasic & Lynch, Chartered, of Kansas City, Kansas, for appellant Nancy J. Wolf.

*Jeffrey B. Rosen* and *Kevin J. Breer,* of Polsinelli, Shalton & Welte, P.C., of Overland Park, for appellee Marino & Wolf, Inc.

Before MARQUARDT, P.J., MALONE, J., and ERIC S. ROSEN, District Judge, assigned.

ROSEN, J.: Nancy J. Wolf, executrix of the Estate of Francis J. Wolf, Jr., appeals the trial court's award of attorney fees to Marino & Wolf, Inc. (M&W). We reverse.

Francis (Frank) J. Wolf, Jr., died in Wyandotte County, Kansas, on September 24, 1998. Shortly thereafter, Nancy, Frank's wife, filed a petition for probate of a lost will in Wyandotte County District Court. The trial court named Nancy as the executrix of Frank's estate (Estate). Among the assets Nancy identified in the Estate's first inventory were 333 shares of M&W stock.

Nancy issued a notice to creditors. M&W filed two petitions for allowance and classification of demand within the 4-month claim period. One of those petitions asserted that M&W held a demand against the Estate "for the purchase [of] 333 shares of stock in Petitioner owned by the decedent . . . pursuant to the terms and conditions of a certain Option Agreement, as amended, a copy of which is attached hereto as Exhibit 'A' at the price of $625.00 per share." Attached to the petition was a copy of the Option Agreement and an amendment to the Option Agreement.

Nancy filed written defenses to M&W's demand, disputing the validity of the Option Agreement and asserting a right to a set off for all monies and commissions due to Wolf at his death. In the probate case, Nancy alleged that in early 1997, the principals of M&W had agreed to new terms for purchasing each other's stock. Nancy also filed a separate civil action in Wyandotte County District Court against M&W and its coowner Jasper Marino, seeking a declaratory judgment and an accounting. This action was dismissed for lack of jurisdiction. In September 2000, M&W filed a

motion for summary judgment seeking to enforce the Option Agreement. Nancy opposed the motion, claiming that there was a genuine issue of fact.

The trial court held a hearing in January 2001, and orally granted M&W's motion. In a subsequent memorandum decision, however, the trial court reversed its decision and found that there was a sufficient factual dispute for Nancy's objections to survive summary judgment.

Nancy filed a motion to reconsider and M&W renewed its motion for summary judgment. The trial court granted M&W's motion for summary judgment and ordered Nancy to convey the M&W stock in exchange for a payment of $625 per share. Nancy appealed the trial court's grant of summary judgment to M&W and then voluntarily dismissed the appeal.

Less than a week after this order, Nancy filed a petition for declaratory relief in the probate court. She asserted that M&W had advised her it would seek attorney fees under the terms of the Option Agreement. She argued that the claim was barred by the statute of limitations set forth in K.S.A. 59-2239, the nonclaim statute.

Thereafter, M&W filed a "bill of costs and expenses of suit," asserting that under the Option Agreement, it was entitled to recover attorney fees, costs, and expenses of the lawsuit. M&W asserted that since the litigation had concluded, it was entitled to recover those costs as the prevailing party. M&W claimed $143,659.41 in attorney fees and expenses. M&W also requested that the amount be offset against the amount it owed for purchasing the Estate's M&W stock.

The trial court held a hearing and ruled that K.S.A. 59-2239 did not bar M&W's request for attorney fees. The trial court also found that M&W's original claim against the Estate, which had a copy of the Option Agreement attached, made attorney fees part of the original demand.

The Option Agreement that was attached to the petition contained the following provision:

"7.13 Attorneys' Fees. If any party to this Agreement brings an action to enforce the terms hereof or to declare rights hereunder, the prevailing party in the final

adjudication of any such action, at trial or on appeal shall be entitled to costs and expenses of suit, including without limitation actual attorneys' fees borne by such party, to be paid by the losing party as fixed by the Court."

Nancy objected to the amount of M&W's attorney fees and expenses. A hearing was held and the trial court found that M&W's attorney fees were reasonable; however, it reduced the amount by 1 percent. The trial court ordered that M&W be allowed $142,222.82 in attorney fees offset against its prior payment for the Estate's stock. Nancy timely appealed the trial court's ruling.

Nancy's primary argument on appeal is that the trial court lacked subject matter jurisdiction to award M&W attorney fees because M&W's claim was not made within 4 months of the notice to creditors pursuant to K.S.A. 59-2239(1). M&W contends that its original demand, which was timely under K.S.A. 59-2239, encompassed its claim for attorney fees.

Whether the trial court has subject matter jurisdiction over a claim is a question of law over which an appellate court has unlimited review. *In re Marriage of Metz*, 31 Kan. App. 2d 623, 625, 69 P.3d 1128 (2003).

Nancy's subject matter jurisdiction argument is misguided. Subject matter jurisdiction is the authority of the court to hear and decide a particular action. *Metz*, 31 Kan. App. 2d at 625. Clearly, trial courts have subject matter jurisdiction in probate proceedings to determine the validity of claims and demands made against the estate. See K.S.A. 59-2204; K.S.A. 2003 Supp. 59-2237(b).

The Kansas courts have, on occasion, referred to the nonclaim statute as jurisdictional in nature. *In re Estate of Reynolds*, 266 Kan. 449, 456, 970 P.2d 537 (1998). However, in *Reynolds*, the court recognized that untimely claims could be considered if the trial court finds fraud or other unconscionable conduct. 266 Kan. at 456. Allowing such an exception negates the "jurisdictional" label, as subject matter jurisdiction cannot be waived. See *Labette Community College v. Board of Crawford County Comm'rs*, 258 Kan. 622, 626, 907 P.2d 127 (1995).

Nothing in the probate code divests the court of subject matter jurisdiction over claims which may be barred under the nonclaim statute. Instead, the nonclaim statute simply limits the trial court's

authority to allow certain claims to be assessed against the estate. See K.S.A. 59-2239(1). The question before us is whether the trial court exceeded its statutory authority, not whether the trial court lacked subject matter jurisdiction.

Nancy argues that the demands made by M&W during the statutory period did not include any claim for attorney fees. Both parties agree that this issue presents a question of statutory interpretation. The interpretation of a statute is a question of law, and the appellate court's scope of review is unlimited. *In re Conservatorship of Huerta*, 273 Kan. 97, 105, 41 P.3d 814 (2002).

K.S.A. 2003 Supp. 59-2237(a) provides, in relevant part, that "[a]ny person may exhibit a demand against the estate of a decedent by filing a petition for its allowance in the proper district court." K.S.A. 59-2239(1) states, in relevant part:

"(1) All demands . . . against a decedent's estate, whether due or to become due, whether absolute or contingent, . . . and including the individual demands of executors and administrators, not exhibited as required by this act within four months after the date of the first published notice to creditors, . . . shall be forever barred from payment . . . ."

Petitions filed in probate cases must: (1) identify the petitioner and his or her interest in applying for relief; (2) state the jurisdictional facts; (3) include the facts, in ordinary and concise language, showing that the petitioner is entitled to the relief sought; and (4) include a prayer for relief. K.S.A. 59-2202.

The probate code does not specifically incorporate any part of the Code of Civil Procedure. In fact, the Supreme Court has rejected assertions that probate matters are governed by the rules of civil procedure. See *In re Estate of Suesz*, 228 Kan. 275, 276, 613 P.2d 947 (1980). In some cases, however, the Kansas appellate courts have assumed that decisions interpreting the pleading statutes in Chapter 60 are applicable in probate cases; therefore, a petition filed in a probate court is to be liberally construed. *In re Estate of Cipra*, 173 Kan. 334, 337, 246 P.2d 267 (1952).

While petitions for allowance of demand against an estate should be liberally construed, probate procedures must still be followed. An administrator's mere knowledge of a claim or potential claim is

not sufficient to avoid the nonclaim statute. See *In re Estate of Jones*, 3 Kan. App. 2d 63, 66, 588 P.2d 960 (1979).

The words "all demands" in K.S.A. 59-2239(1) are all-inclusive and include claims and demands of every type and character against a decedent's estate except for those particular cases where the statute expressly provides otherwise. *Union Nat'l Bank & Trust Co. v. Estate of Werning*, 233 Kan. 671, Syl. ¶ 2, 665 P.2d 192 (1983).

M&W contends that K.S.A. 60-210(c) allows written agreements to be attached to a petition and to be considered part of the petition "for all purposes." However, K.S.A. 60-210(c) does not apply in a probate case; the probate code has its own pleading statute which does not contain a similar provision. See K.S.A. 59-2202. Moreover, simply attaching a contract to a pleading does not excuse a party from asserting its claims, even in cases under Chapter 60. While the contents of such an attachment are to be considered in determining whether a petition states a claim for purposes of K.S.A. 60-212(b)(6), it does not dispense with the necessity of stating the nature of a claim. See *Hoover Equipment Co. v. Smith*, 198 Kan. 127, 132, 422 P.2d 914 (1967); see also *In re C.H.W.*, 26 Kan. App. 2d 413, 417-18, 988 P.2d 276 (1999) (SRS's motion to terminate mother's parental rights, which incorporated by reference 48 pages of exhibits, failed to state specific facts relied upon for termination motion as required by statute).

There are also significant policy concerns which should be considered when addressing demands in a probate proceeding. The purpose of demand statutes and nonclaim provisions are to protect the executor or executrix from stale claims and to enable him or her to close the estate and distribute the assets without unnecessary delay. 3 Bartlett, Kansas Probate Law and Practice §1316, at 190 (rev. ed. 1953).

An additional purpose of the demand requirement is to give the executor or executrix adequate facts and circumstances to understand the exact nature of the claim and to aid in his or her determination as to whether to allow or contest the claim. For example, other courts have rejected probate demands where the claim did not state the facts or circumstances constituting the basis of the

claim, and the claimed amount was substantially different from that sought later in court. See, *e.g., Villegas v. McBride*, 112 Wash. App. 689, 50 P.3d 678 (2002). A notice of claim complies with the statutory requirements if the information provided by the notice will enable the personal representative to investigate the claim without the expenditure of substantial sums and make an intelligent judgment whether to allow or disallow the claim. *Vincent v. Estate of Simard*, 801 A.2d 996, 999 (Me. 2002); *In re Estate of Lingle*, 822 So. 2d 320, 322-23 (Miss. App. 2002).

Here, M&W's written demand made no explicit mention of attorney fees in its timely filing, even though the right to attorney fees would be a claim against the assets of the estate contingent on M&W's being the prevailing party. M&W knew before filing its claim that the estate was balking at complying with the Option Agreement. Even if M&W was uncertain whether its claim would be contested, it clearly knew of Nancy's objections to its claim when she filed written defenses. M&W could have amended its demand to include the contingent attorney fee claim in a timely manner under the nonclaim statute.

Moreover, a timely demand may be amended after the expiration of the nonclaim statute. 3 Bartlett, Kansas Probate Law and Practice § 1304, at 163 (rev. ed. 1953); *In re Estate of Shaffer*, 203 Kan. 264, 270, 454 P.2d 1 (1969).

In light of the plain language of K.S.A. 59-2202 and the purposes of the claim provisions, we must conclude that M&W's demand was inadequate to meet the requirements for a contingent claim for attorney fees. Accordingly, the trial court lacked authority under K.S.A. 59-2239 to award M&W attorney fees.

Reversed.

MALONE, J., dissenting: I respectfully dissent. The petition for allowance and classification of demand filed by Marino & Wolf, Inc. (M&W) against the Estate of Francis J. Wolf, Jr., deceased, substantially complied with K.S.A. 59-2202 and placed the executrix, Nancy J. Wolf, on notice of the potential claim for attorney fees.

The time allowance for filing a claim against a probate estate pursuant to K.S.A. 59-2239 is strictly enforced. However, as the majority opinion acknowledges, the substance of a petition for allowance of demand against an estate should be liberally construed. *In re Estate of Cipra*, 173 Kan. 334, 337, 246 P.2d 267 (1952).

Significantly, M&W was not a routine creditor making an ordinary demand for the recovery of money against the Wolf estate. M&W was the corporate business partially owned by Francis J. (Frank) Wolf at the time of his death. The "claim" filed by M&W was merely the notice of an Option Agreement allowing the corporation to redeem Frank's shares of stock at an agreed price of $625 per share. The Option Agreement *was* M&W's claim. Accordingly, M&W filed a petition placing the executrix on notice of the "attached" agreement and requesting to exercise its option "pursuant to the terms" of the agreement.

The majority opinion states that a purpose of the demand requirement in probate cases is to give the personal representative adequate facts and circumstances to understand the exact nature of the claim and to aid in his or her determination whether to allow or contest the claim. In this case, Nancy, who was represented by legal counsel at all times, could have understood the exact nature of the claim simply by reading the contract M&W was asking the probate court to enforce. She should not be able to claim surprise over the attorney fee provision which was clearly set forth in the contract and provided to her in a timely manner.

Likewise, M&W should not be faulted for failing to make a specific request for fees and expenses earlier in the proceedings. Under the Option Agreement, M&W was not entitled to recover the costs and expenses of the suit until it became the "prevailing party in the final adjudication" of the lengthy dispute between Nancy and M&W.

Finally, had Nancy prevailed in the probate litigation, she would have no doubt made a claim against M&W under paragraph 7.13 of the Option Agreement and she would have been entitled to recover her fees and expenses on behalf of the estate. It seems inequitable to deny M&W the right to enforce the same contract provision.

For these reasons, I would affirm the judgment of the trial court.