No. 91,225

In the Matter of the Estate of FRANCIS J. WOLF, JR., a/k/a FRANK J. WOLF, Deceased.

112 P.3d 94

Opinion filed June 3, 2005.

*John M. McFarland,* of Kutak Rock, LLP, of Kansas City, Missouri, argued the cause, and *David L. Higgins,* of Higgins, Lysaught, Tomasic & Lynch, Chartered, of Kansas City, Kansas, was with him on the briefs for appellant Nancy J. Wolf.

*Jeffrey B. Rosen,* of Polsinelli Shalton & Welte, P.C., of Overland Park, argued the cause, and *Kevin J. Breer,* of the same firm, was with him on the brief for the appellee Marino & Wolf, Inc.

The opinion of the court was delivered by

BEIER, J.: This probate appeal requires us to determine the first-impression issue of whether a contract containing an attorney fees clause, attached to a creditor's petition for allowance and classification of a demand against an estate, constitutes an adequate and timely claim for such fees:

The district court held the petition in this case properly included a claim for attorney fees. The Court of Appeals reversed in *In re*

*Estate of Wolf*, 32 Kan. App. 2d 1247, 96 P.3d 1110 (2004). This court granted the creditor's petition for review under K.S.A. 20-3018(b).

Marino and Wolf, Inc. (M&W), the creditor, was an insurance brokerage company owned by Francis J. "Frank" Wolf and Jasper Marino. Wolf and Marino were among the parties to an Option Agreement, which contained a provision stating that the prevailing party in any action to enforce the terms of the agreement would be entitled to recover attorney fees and other costs and expenses.

Wolf died on September 24, 1998. After filing a petition for probate of a lost will in Wyandotte County District Court, his wife, Nancy J. Wolf, was named executrix. Among the assets identified in the estate's inventory and valuation were 333 shares of M&W stock.

Nancy issued a notice to creditors, and M&W filed two petitions for allowance and classification of demands within the 4-month limitations period provided in the nonclaim statute, K.S.A. 59-2239. In one of the petitions, M&W sought to "purchase 333 shares of stock in Petitioner owned by the decedent . . . pursuant to the terms and conditions of a certain Option Agreement, as amended, a copy of which is attached hereto as Exhibit 'A' at the price of $625.00 per share." Copies of the Option Agreement and an amendment to the Option Agreement were attached to the petition. No mention of attorney fees was included in the petition itself.

Nancy disputed the validity of the Option Agreement and asserted a right to a setoff for all monies and commissions owed by M&W to Frank Wolf at the time of his death. After several years of litigation between the parties, M&W ultimately obtained summary judgment in its favor, and the district court ordered Nancy to convey the stock in exchange for payment of $625 per share. Initially, Nancy appealed the district court's summary judgment in favor of M&W, but she later voluntarily dismissed that appeal.

After M&W advised Nancy it would seek attorney fees under the terms of the Option Agreement, Nancy filed a petition for declaratory relief in probate court. Nancy argued M&W's attorney fees claim was barred by the 4-month statute of limitations in

K.S.A. 59-2239, the nonclaim statute, because it had not been included in M&W's petition.

M&W then filed a "Bill of Costs and Expenses of Suit," asserting that the Option Agreement entitled it as the prevailing party in the stock option dispute to recover attorney fees, costs, and expenses incurred in litigating its demand. M&W claimed $143,659.41 in attorney fees and expenses and requested that the amount be offset against the price of the stock. Although the district court reduced the amount of attorney fees awarded by 1 percent, it otherwise allowed M&W to recover its full fees and expenses.

A majority of the reviewing Court of Appeals' panel reversed the district court; Judge Tom Malone dissented. See 32 Kan. App. 2d at 1253.

The Court of Appeals majority first considered and rejected Nancy's contention that the district court lacked subject matter jurisdiction to award M&W attorney fees. 32 Kan. App. 2d at 1250-51. It observed that trial courts clearly have subject matter jurisdiction in probate proceedings to determine the validity of claims and demands made against an estate. See K.S.A. 59-2204; K.S.A. 2004 Supp. 59-2237(b). The majority identified the issue before it as whether the district court exceeded its statutory authority to allow certain claims to be assessed against the estate. It concluded the district court lacked authority to allow M&W's claim for attorney fees because "M&W's written demand made no explicit mention of attorney fees in its timely filing . . . [and] M&W could have amended its demand to include the contingent attorney fee in a timely manner under the nonclaim statute." 32 Kan. App. 2d at 1253.

In his dissent, Judge Malone reasoned that M&W's petition substantially complied with K.S.A. 59-2202 and put Nancy on notice of the contingent claim for attorney fees. The Option Agreement *was* M&W's claim, in Judge Malone's view, and Nancy was at all times represented by legal counsel who could have understood the exact nature of M&W's claim by reading the contract. See 32 Kan. App. 2d at 1253-54 (Malone, J., dissenting).

Our standard of review on appeal is unlimited because the question of whether M&W's attorney fees claim was adequately and

timely pled requires statutory interpretation. See *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003); *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

M&W's attorney fees claim is based on Section 7.13 of the Option Agreement, which stated:

"7.13 <u>Attorneys' Fees</u>. If any party to this Agreement brings an action to enforce the terms hereof or to declare rights hereunder, the prevailing party in the final adjudication of any such action, at trial or on appeal shall be entitled to costs and expenses of suit, including without limitation actual attorneys' fees borne by such party, to be paid by the losing party as fixed by the Court."

M&W contends that merely attaching the Option Agreement to its petition was sufficient to comply with the nonclaim statute, K.S.A. 59-2239. K.S.A. 59-2239(1) reads in relevant part:

"*All demands* . . . against a decedent's estate, whether due or to become due, *whether absolute or contingent*, . . . and including the individual demands of executors and administrators, *not exhibited as required by this act within four months* after the date of the first published notice to creditors . . . *shall be barred from payment* . . . ." (Emphasis added.)

In addition, K.S.A. 59-2202 prescribes the contents of petitions in probate cases:

"Every petition in a probate proceeding shall state: (1) The name, residence, and address of the petitioner; (2) the interest of the petitioner and his or her right to apply to the court; (3) the jurisdictional facts; (4) the facts, in ordinary and concise language, showing that the petitioner is entitled to the relief sought; and (5) a prayer for relief."

M&W correctly asserts that this court has held the legislature did not intend for claimants to lose their rights in probate proceedings for failure to file pleadings in strict compliance with a particular form. See *First National Bank of Topeka v. Hiatt*, 201 Kan. 50, 56, 439 P.2d 373 (1968); see also K.S.A. 59-2201 (no defect in form to impair substantial rights).

We also note that the final adjudication of the stock option dispute did not occur until Nancy, as executrix for the estate, dismissed the estate's appeal. M&W's right to recover attorney fees did not actually arise until that time. However, there can be little serious question that the attorney fees claim qualified as contingent from the moment M&W was forced to litigate over the Option

Agreement. If M&W prevailed in the litigation, the plain language of the Option Agreement would allow it to recover its "costs and expenses of suit, including without limitation actual attorneys' fees borne," and K.S.A. 59-2239 required this contingent claim to be pled in M&W's probate petition.

M&W relies on *In re Estate of Moe*, 11 Kan. App. 2d 244, 719 P.2d 7, *rev'd on other grounds*, 240 Kan. 242, 729 P.2d 447 (1986), and *In re Estate of Ray*, 180 Kan. 634, 306 P.2d 190 (1957), to support its argument that attaching the Option Agreement containing the attorney fees provision satisfied its pleading obligations under the Kansas Probate Code, K.S.A. 59-101 *et seq.*

In *Estate of Moe*, the claimant filed a petition against the estate to recover payment for services under a theory of quantum meruit. The district court found instead that the decedent orally promised to will certain property to the claimant, and it ordered specific performance. The Court of Appeals affirmed, concluding the petition gave adequate notice of the facts giving rise to a cause of action on the oral contract to will. 11 Kan. App. 2d at 249-50. The Court of Appeals stated: "[I]t has long been held that a petition for allowance of demand in probate proceedings is to be liberally construed." 11 Kan. App. 2d at 250.

In *Estate of Ray*, the district court found the probate claimant could no longer be awarded the decedent's home on her claim for breach of an oral contract to transfer the home because the property was no longer part of the estate. However, the court construed the petition liberally to allow the claimant to recover in quantum meruit. See 180 Kan. at 636-37.

M&W argues that, like the claimants in *Moe* and *Ray*, it should be able to rely on a liberal construction of its probate petition and, specifically, that the attachment of the Option Agreement to its petition should be sufficient to constitute pleading of its contingent claim for attorney fees and costs. It asserts that the language of its petition should have been read to include a demand for enforcement of the entire Option Agreement. We disagree. The petition explicitly referenced only the stock purchase provided for in the agreement.

In addition, both *Estate of Moe* and *Estate of Ray* are distinguishable. In each case, the label of the cause of action changed but the reason to allow recovery from the estate's assets and the magnitude of that recovery remained the same. All of the facts justifying any recovery appeared on the face of each petition. Here, there were actually two separate and distinct claims, the noncontingent claim for purchase of the stock and the contingent claim under the agreement's attorney fees provision. The reasons they would affect estate assets and the size and character of their impacts were distinct. The facts justifying only one of the claims appeared on the face of the petition.

In *In re Estate of Reynolds*, 266 Kan. 449, 455, 970 P.2d 537 (1998) (quoting *In re Estate of Watson*, 21 Kan. App. 2d 133, Syl. ¶ 5, 896 P.2d 405 [1995]), this court stated:

" 'K.S.A. 59-2239 is a special statute of limitations. The words 'all demands' are *all-inclusive* and include *claims and demands of every type and character* against a decedent's estate except for those particular cases where the statute expressly provides otherwise. A party seeking to remove something from a decedent's estate must comply with the nonclaim statute in the absence of an express statutory exception such as set forth in K.S.A. 59-2239(2).' " (Emphasis added.)

Further, in *Young v. Wheeler*, 234 Kan. 845, 851, 676 P.2d 748 (1984) (quoting Atkinson, Law of Wills § 127, p. 691 [2d ed. 1953]), this court recognized that legislatures and courts in general have thought " ' "it is better policy to deny exceptions to the bar of the nonclaim statute rather than to impair its final effect by allowing exceptions, however meritorious." ' " The plain language of the nonclaim statute also is emphasized in 3 Bartlett, Kansas Probate Law and Practice § 1316 (rev. ed. 1953):

"The language of the nonclaim statute is clear, unambiguous, and comprehensive. Words more significant to express every demand to which a personal representative can or ought to respond, or which can charge the assets in his hands subject to administration, or more expressive of every liability, resting upon the decedent, could not have been employed."

Having failed to satisfy the requirements of the nonclaim statute, M&W is now barred from collecting its attorney fees, costs, and expenses under the Kansas Probate Code.

In the alternative, M&W argues that its pleading was adequate when measured against the requirements of the Kansas Code of Civil Procedure, K.S.A. 60-101 *et seq.*

K.S.A. 2004 Supp. 60-209(h) provides:

"Whenever a claim, defense or counterclaim is founded upon a written instrument, the same may be pleaded by reasonably identifying the same and stating the substance thereof or it may be recited at length in the pleading or a *copy may be attached* to the pleading as an exhibit." (Emphasis added.)

K.S.A. 60-210(c) provides: "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof *for all purposes.*" (Emphasis added.)

M&W argues that K.S.A. 2004 Supp. 60-209(h) was satisfied because M&W's claim against the estate was founded upon a written statement, the Option Agreement, which was identified in the petition and attached to the petition. M&W further contends that pursuant to K.S.A. 60-210(c), the Option Agreement was a part of the petition for "all purposes," including enforcement of the provision allowing M&W to recover its attorney fees and expenses.

"General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling." *In re Estate of Antonopoulos,* 268 Kan. 178, 189, 993 P.2d 637 (1999).

We hold that neither K.S.A. 2004 Supp. 60-209(h) nor K.S.A. 60-210(c) apply in this case because the probate code has its own specific pleading statute, K.S.A. 59-2202, and makes clear in the nonclaim statute, K.S.A. 59-2239, that contingent claims must be set forth in a creditor's petition. Unlike the civil procedure code, the more specific probate code does not contain a provision permitting exhibits to pleadings to be considered "a part thereof for all purposes." We also see nothing in either the probate code or the civil procedure code that would lead us to believe the legislature intended the specific probate statute to be controlled by the general civil procedure statute.

Judgment of the Court of Appeals is affirmed; judgment of the district court is reversed.

LOCKETT, J., Retired, assigned.