**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 13, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AUTUMN BERTELS,

    Plaintiff - Appellant,

v.

                          No. 23-3276

FARM BUREAU PROPERTY &
CASUALTY INSURANCE COMPANY,

    Defendant - Appellee.
_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:20-CV-02298-JWB)**
_____

Randall L. Rhodes of Rouse Frets White Goss Gentile Rhodes, P.C., Leawood, Kansas (Rachel N. Boden of Rouse Frets White Goss Gentile Rhodes, P.C., Leawood, Kansas, and Stephen G. Sanders of Sanders.Law, Kansas City, Missouri, with him on the briefs), for Plaintiff-Appellant.

Adam M. Hall (Todd N. Thompson with him on the brief), Thompson-Hall, P.A., Lawrence, Kansas, for Defendant-Appellee.
_____

Before **HARTZ**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Plaintiff Autumn Bertels was badly injured when a car driven by her grandmother Elizabeth Bertels collided head-on with a car driven by Denver Barr.

Elizabeth and Mr. Barr were killed. For several years there was no indication that anyone thought that Elizabeth bore any responsibility for the accident. Then Autumn filed suit against Elizabeth. Autumn and Elizabeth's estate (the Estate) reached an agreement under which (1) Autumn's claims would be presented to a judge in what the parties imaginatively referred to as a trial, where the "evidence" would consist of reports and affidavits submitted by Autumn, without any cross-examination or counter evidence from the Estate; (2) the Estate agreed to assign to Autumn any claims, such as claims for breach of contract and bad faith, that the Estate had against Elizabeth's liability insurer, Farm Bureau Property & Casualty Insurance Company (Farm Bureau); (3) Autumn agreed that she would not try to collect from the assets of the Estate if she obtained a judgment against the Estate; and (4) Autumn agreed to pay the Estate's litigation expenses. After the "trial" judge awarded a $15.75 million judgment in favor of Autumn against the Estate, the suit before us was filed against Farm Bureau by Autumn as assignee of the Estate's claims against its insurer.

The United States District Court for the District of Kansas dismissed Autumn's suit against Farm Bureau for lack of jurisdiction, ruling that Autumn had no standing to bring the suit because the assignment from the Estate was invalid. It ruled that Autumn provided no consideration for the assignment because what she promised to do and refrain from doing was already required by the Kansas nonclaim statute, K.S.A. § 59-2239, which governs claims against deceased persons and their estates. Autumn appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we agree with the district court and affirm the judgment.

Page 2

## I.    BACKGROUND

On October 15, 2010, Elizabeth Bertels was driving four of her grandchildren on a highway in Kansas when Mr. Barr, driving in the opposite direction, crossed the centerline and collided with her car. Both Elizabeth and Mr. Barr died at the scene. Three of the grandchildren were not seriously injured, but Autumn, who was nine years old, suffered a severe spinal-cord injury and paralysis from the chest down.

Farm Bureau provided liability coverage for Elizabeth's car limited to $50,000 per person and $100,000 per accident. Farm Bureau made a preliminary determination that Mr. Barr was 100% at fault for the accident, so Elizabeth had no liability exposure. Nevertheless, it placed the matter on a "watch list" because of the severity of the injuries.

In December 2010 the Bertels family notified Farm Bureau that they had retained attorney Steve Sanders. A few days later, Mr. Sanders provided Farm Bureau with a letter from Mr. Barr's insurer acknowledging that the police report confirmed that Mr. Barr was at fault for the accident. Farm Bureau thereafter closed its file with respect to liability coverage.

After a few months Mr. Sanders began litigating on behalf of the family. In September 2011 he filed a wrongful-death action on behalf of Elizabeth's daughter Lisa Swigert against Mr. Barr and his estate. Over a year later, in October 2012, he filed two more actions: one on behalf of Autumn against Elizabeth, Mr. Barr's estate, and Ford Motor Company, and another by the other three grandchildren against Elizabeth and Mr. Barr's estate. Autumn settled with Mr. Barr's estate and Ford.

Farm Bureau settled the claims of the other three grandchildren but did not settle with Autumn.

In August 2014 David McCollum[1] filed a petition to open a probate estate for Elizabeth. The next month Mr. Sanders filed a lawsuit in Kansas state court on behalf of Autumn, through Ms. Swigert as next friend, against the Estate, alleging that Elizabeth's negligent driving caused her injuries.

Autumn and the Estate reached an agreement in the case (the Agreement) that protected the Estate's assets but rendered Farm Bureau highly vulnerable. The Estate agreed to "assign any and all rights or causes of action it may have against [Farm Bureau] to [Autumn]." Aplt. App, Vol. I at 146. It also agreed to have Autumn's suit against the Estate tried to a judge and not to object to evidence (including reports or affidavits submitted by Autumn), file posttrial motions, or appeal. In return, Autumn agreed not to "execute, levy or sue out an execution against [the Estate], or otherwise attempt to collect any funds from the [Estate] or [its] assets." *Id.* And she pledged to pay "the legal fees of independent counsel, and any related costs and/or expenses" if the Estate hired independent counsel, and to pay "the Administrator of the Estate's hourly fees." *Id.* at 147. After what was a trial in name only, the state court found Elizabeth to be 60% at fault for the accident and entered a $15.75 million judgment for Autumn against the Estate.

---

[1] The parties stipulated that the petition was filed by Mr. Sanders. But the state-court records reflect that it was filed by Mr. McCollum.

In June 2020, acting under the assignment, Autumn sued Farm Bureau in federal court for breach of contract, bad faith, breach of fiduciary duty, and negligence. She asserted that Farm Bureau breached its duties to Elizabeth and the Estate in numerous respects, including by failing to appropriately investigate the accident and refusing to tender a policy-limits settlement offer to Autumn in a timely manner. She sought $9,454,947.12 in damages.

The district court granted a motion for summary judgment by Farm Bureau, agreeing that the insurer had no duty to engage in settlement negotiations with Autumn because she never made a claim for compensation. Autumn appealed and we reversed because an intervening Kansas Supreme Court case, *Granados v. Wilson*, 523 P.3d 501 (Kan. 2023), had revised the analysis required to determine whether there had been a breach of a duty to seek settlement. *See Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 21-3222, 2023 WL 2747864, at *3–5 (10th Cir. Apr. 3, 2023) (*Bertels I*).

On remand the district court granted Farm Bureau's renewed motion for summary judgment, this time concluding that Autumn lacked standing to sue Farm Bureau as assignee of the Estate because the Agreement between Autumn and the Estate was not supported by consideration. The district court reasoned that Autumn promised to do nothing that she was not already bound to do, as the Kansas nonclaim statute prevented her from collecting from the Estate's assets and required her to pay the Estate administrator's costs and legal fees.

II.    DISCUSSION

A. Standing

The sole issue before us on appeal is whether Autumn has standing to sue Farm Bureau. We review de novo the district court's determination at summary judgment that Autumn does not have standing. *See Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021).

Article III of the United States Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. There is no case or controversy unless the plaintiff has standing. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). "To establish standing, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Id.*

As the parties agree, whether Autumn has standing to sue Farm Bureau depends on the validity of the assignment from the Estate in the Agreement. In *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000), the Supreme Court recognized that an assignee of a claim "has standing to assert the injury in fact suffered by the assignor." But "an invalid assignment defeats standing if the assignee has suffered no injury in fact himself." *US Fax L. Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1120 (10th Cir. 2007).

The assignment in this case was by contract. We apply Kansas contract law to determine the validity of the Estate's assignment to Autumn. Under that law, all

contracts "must be supported by consideration" to be "enforceable." *State ex rel. Ludwick v. Bryant*, 697 P.2d 858, 861 (Kan. 1985). A "forbearance to prosecute or defend a claim or action, or to do an act which one is not legally bound to perform, is usually a sufficient consideration for a contract based thereon . . . ." *Id.* at 862 (internal quotation marks omitted). But not if "the claim or defense is obviously invalid, worthless, or frivolous." *Id.* (internal quotation marks omitted).

At the outset, Autumn contends that Farm Bureau has waived any argument that the Agreement lacked consideration. But standing concerns the court's subject-matter jurisdiction and may be raised at any time. *See Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 592–93 (10th Cir. 1996). Autumn also argues that the existence of consideration is a question of fact that must be submitted to the jury. But "[t]he district court, not a jury, must weigh the merits of what is presented on a Rule 12(b)(1) motion to dismiss including resolving any issues of fact . . . ." 5B Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 1350 at 243–44 (3d ed. 2004) (Wright & Miller).[2] In any event, there are no disputes of material fact, so summary judgment was procedurally proper. *See* Fed. R. Civ. P. 56(a).

---

[2] We recognize that if "a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case," the jurisdictional ruling should "await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial." Wright & Miller § 1350 at 245–49. But that is not the situation here. A ruling on whether Autumn has standing to sue Farm Bureau because the Agreement was supported by consideration does not require resolving whether Farm Bureau breached its duties to Elizabeth.

On the merits of the standing issue, Farm Bureau argues that the Agreement lacked consideration because Autumn promised to do nothing that she was not already bound to do—the Kansas nonclaim statute barred her from executing judgment against the Estate's assets and required her to pay the Estate's expenses and legal fees. We agree. We begin by examining the nonclaim statute and applying it to the facts of this case. We then address Autumn's counterarguments.

### B. Kansas Nonclaim Statute

Nonclaim statutes allow estates to be settled promptly by forbidding tardy claims. Most state probate codes include two types of time limitations on claims against an estate: (1) those that "provide a relatively short time period, generally two to six months, that begins to run after the commencement of probate proceedings"; and (2) those that "call for a longer period, generally one to five years, that runs from the decedent's death." *Tulsa Prof'l Collections Servs., Inc. v. Pope*, 485 U.S. 478, 480 (1988). Typically, "if probate proceedings are not commenced and the shorter period therefore never is triggered, then claims nonetheless may be barred by the longer period." *Id.*

The Kansas nonclaim statute, K.S.A. § 59-2239, establishes such a scheme. Subsection (1) of the statute sets two time limits. First, it contains a statute of limitations providing that "[a]ll demands" against a decedent's estate must be brought within four months after publication of notice to creditors of the initiation of probate proceedings (or 30 days after actual notice to a known or reasonably ascertainable creditor). K.S.A. § 59-2239(1). Second, it contains a statute of repose

providing that all unsecured claims against a decedent's estate must be initiated (by petitioning for probate of the will or administration of the estate) within six months of the decedent's death. *See id.*;[3] *Matter of Est. of Clare*, 389 P.3d 1274, 1276 (Kan. 2017). Here, Autumn failed to file a timely claim under § 59-2239(1). No one had sought to open a probate estate for Elizabeth until Mr. Sanders did so in August 2014 (much later than six months after Elizabeth's death in October 2010), and Autumn's suit against the Estate was filed in September 2014.

Subsection (2) of the nonclaim statute, however, provides a limited exception to the rigid timelines of subsection (1) for claimants seeking to bring tort claims

---

[3] K.S.A § 59-2239(1) provides in full:

*All demands*, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent, including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor or indemnitor, and including the individual demands of executors and administrators, *shall be forever barred from payment unless the demand is presented within the later of: (a) four months from the date of first publication of notice under K.S.A. 59-2236, and amendments thereto; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given*, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control. *No creditor shall have any claim against or lien upon the property of a decedent* other than liens existing at the date of the decedent's death, *unless a petition is filed for the probate of the decedent's will* pursuant to K.S.A. 59-2220 and amendments thereto *or for the administration of the decedent's estate* pursuant to K.S.A. 59-2219 and amendments thereto *within six months after the death of the decedent* and such creditor has exhibited the creditor's demand in the manner and within the time prescribed by this section, except as otherwise provided by this section. (Emphasis added).

against a decedent's estate. These actions may be brought despite the subsection (1)

time bar so long as they are otherwise timely under the general statutes of limitations.

But subsection (2) imposes two conditions on such tort claims. One is that recovery

on such a claim cannot "affect the distribution of the assets of the estate." K.S.A. §

59-2239(2). In other words, such tort claimants may not seek to recover from the

estate's assets. *See Kannaday v. Ball*, 234 P.3d 826, 831 (Kan. Ct. App. 2010). This

usually means they are limited to the recovery of insurance proceeds. *See id.* at 830

(Under K.S.A. § 59–2239(2), "'only insurance proceeds can be reached if the claim

was not filed within the nonclaim period.'" (quoting Kansas Estate Administration

Handbook § 4.7 at 4–3 (6th ed. 1999 Supp.)). The other condition is that "[a]ll court

costs incurred in a proceeding under [subsection 2] shall be taxed to the petitioner."

K.S.A. § 59-2239(2).[4]

---

[4] K.S.A § 59-2239(2) provides in full:

Nothing in this section shall affect or prevent the enforcement of a claim arising out of tort against the personal representative of a decedent within the period of the statute of limitations provided for an action on such claim. For the purpose of enforcing such claims, the estate of the decedent may be opened or reopened, a special administrator appointed, and suit filed against the administrator within the period of the statute of limitations for such action. *Any recovery by the claimant in such action shall not affect the distribution of the assets of the estate of the decedent unless a claim was filed in the district court within the time allowed for filing claims against the estate under subsection (1)* or an action commenced as provided in subsection (2) of K.S.A. 59-2238 [relating to claims pending against the decedent at the time of death] and amendments thereto. The action may be filed in any court of competent jurisdiction and the rules of pleading and procedure in the action shall be the same as apply in civil actions. Any such special administration shall be closed and the special administrator promptly discharged when the statute of

These two conditions on filing a claim under § 59-2239(2) are central to our conclusion that Autumn did not provide consideration to the Estate in return for the assignment to her of its claims against Farm Bureau. To begin with, Autumn's promise not to seek to recover from the Estate's assets added no burden to her because she was already barred from doing so under the assets-protection condition imposed by subsection (2). She misses the point when she argues that the "'ultimate object'" of her underlying claim was to seek the "'assets of the decedent's liability insurance carrier,'" not the assets of the Estate, and that therefore her claim came under the exception to the time bar of subsection (1). Aplt. Br. at 19 (quoting *Kannaday*, 234 P.3d at 831). She fails to recognize that even if her claim comes under the exception so that she can file suit against the Estate, the issue is not whether Autumn could file the suit, but whether she could execute on the assets of the Estate if she prevailed. Subsection (2) says that she could not, so her promise not to do so under the Agreement was merely a promise to "'refrain[] from doing something'" that was already prohibited. *Temmen v. Kent-Brown Chevrolet Co.*, 535 P.2d 873, 880 (Kan. 1975) (quoting 1 Williston on Contracts § 102A (3d ed.)). Because Autumn incurred no "legal detriment," her promise did not constitute consideration. *Id.*

---

limitations for filing such actions has expired and no action has been filed or upon conclusion of any action filed. *All court costs incurred in a proceeding under this subsection shall be taxed to the petitioner.* (Emphasis added).

Page 11

Likewise, Autumn's promise to pay the "Administrator of the Estate's hourly fees" and "the legal fees of independent counsel, and any related costs and/or expenses" was worthless because she would have to pay those expenses anyway under the costs condition imposed by subsection (2). Aplt. App., Vol. I at 147. To be sure, costs are generally taxed to the estate in Kansas probate proceedings. *See* K.S.A. § 59-2214 ("In all probate proceedings relating to a decedent or conservatee, the court shall tax the costs thereof against the estate unless otherwise provided by this act . . . ."). These costs include expenses and compensation for the estate administrator and her counsel. K.S.A. § 59-1717 provides that an administrator may recover all "necessary expenses incurred in the execution of his or her [duties]," including "compensation for services and those of his or her attorneys as shall be just and reasonable." *See In re Lohse's Est.*, 483 P.2d 1048, 1053 (Kan. 1971) ("The administrator of an estate is entitled to an allowance for compensation and expenses for himself and his attorney, the same to be paid from the assets of the estate" (citing K.S.A. § 59-1717)).

But the costs condition imposed by subsection (2) of the nonclaim statute flips the script. It provides that "[a]ll court costs incurred in a proceeding under this subsection shall be taxed to the *petitioner*," not to the estate. K.S.A. § 59-2239(2) (emphasis added). In other words, a tort claimant opening the estate to bring suit after expiration of the subsection (1) time bar must pay all costs incurred by the estate during the proceedings. The obvious purpose of this provision is to protect the estate from having to pay any expenses while the alleged tort victim pursues a claim against

the liability insurer. Thus, Autumn's promise to pay the Estate's expenses and attorney fees was merely a promise to do what she was "already bound to do," which "does not constitute a sufficient consideration for a new promise." *Apperson v. Sec. State Bank*, 528 P.2d 1211, 1219 (Kan. 1974).

Autumn does not dispute that the statute requires the petitioner to pay those expenses, but she claims that she was not the "petitioner." We recognize that the parties stipulated that it was Autumn's attorney who filed as the petitioner to open a probate estate for Elizabeth so that Autumn could sue the Estate. But the attorney who filed the petition, as any attorney representing a client, was acting as Autumn's agent and would bind her (and even if he personally paid those expenses, he would surely be reimbursed by his client).

Autumn argues in her reply brief that her promise to pay the litigation expenses constituted consideration because she had the right as a minor to disaffirm the Agreement but instead chose to be bound by it. We are not persuaded. Her obligation to pay the Estate's expenses did not arise under the Agreement. Rather, it was a statutory obligation. She could not disclaim it. Therefore, including that promise in the Agreement added nothing to her obligations.

### C. Autumn's Further Counterarguments

Autumn raises several additional arguments based on doctrines that purportedly modify or nullify the nonclaim statute's application, supersede the statute, or render it irrelevant. We reject them all.

Page 13

### 1.    Tolling

Under our above analysis Autumn's promises in the Agreement provide the Estate with no consideration if her claim is untimely under subsection (1) of the nonclaim statute because subsection (2) already protects the Estate from having to bear the expense of the litigation or an adverse judgment. Autumn contends, however, that our analysis is inapplicable because her claim *was* timely under subsection (1), rendering subsection (2) irrelevant. She argues that the limitations and repose periods in subsection (1) were tolled by her status as a minor. We disagree.

Autumn relies on K.S.A. § 60-515(a), which states that the time limits to file suit are tolled when a person is "under 18 years old, incapacitated, or imprisoned for a term shorter than the person's natural life." *Doe v. Popravak*, 421 P.3d 760, 766 (Kan. Ct. App. 2017). Under this provision, minor claimants may bring actions "within one year" after turning 18 but no more than "eight years after the time of the act giving rise to the cause of action." K.S.A. § 60-515(a).[5]

---

[5] K.S.A § 60-515(a) provides in full:

Except as provided in K.S.A. 60-523, *if any person entitled to bring an action*, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, *is less than 18 years of age,* an incapacitated person or imprisoned for a term less than such person's natural life, *such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act* giving rise to the cause of action.

Autumn was nine years old at the time of the accident in October 2010. She filed her claim against the Estate on September 26, 2014, before she was 18 and less than eight years after the accident. Thus, she argues, her demand against the Estate was timely if K.S.A. § 60-515(a) applies. If that were so, subsection (2) of the nonclaim statute would not be applicable; she would have had a viable claim against the assets of the Estate, and her promise not to enforce a claim against the Estate's assets would constitute consideration.

But does K.S.A. § 60-515(a) apply to the nonclaim statute? The answer is not obvious on the face of the two statutes. The disability-tolling statute contains no exception for the nonclaim statute. And, in turn, the nonclaim statute contains no exception from its deadlines for the provisions of the disability-tolling statute (or any other tolling statute for that matter). No case has come before the Kansas Supreme Court requiring it to determine which statute prevails. We therefore must predict what it would decide. *See Dyno Nobel v. Steadfast Ins. Co.*, 85 F.4th 1018, 1025 (10th Cir. 2023). In making our prediction, "we may consider a number of authorities, including analogous decisions by the state Supreme Court, the decisions of the lower courts in the state, the decisions of the federal courts and of other state courts, and the general weight and trend of authority." *MidAmerica Constr. Mgmt.,*

---

Notwithstanding the foregoing provision, if a person imprisoned for any term has access to the court for purposes of bringing an action, such person shall not be deemed to be under legal disability. (Emphasis added).

*Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006) (internal quotation marks omitted). Applying those tools, we believe the Kansas Supreme Court would conclude that tolling under K.S.A. § 60-515(a) is not available for claims against a decedent's estate under the nonclaim statute.

Subsection (1) of the nonclaim statute applies to "[a]ll demands" and all "creditor[s]." K.S.A. § 59-2239(1). This language has been read "to be broadly inclusive of any and all claims, making exception only where a statute expressly provides otherwise." *Nelson v. Nelson*, 205 P.3d 715, 731 (Kan. 2009) (claim that decedent breached promise in property settlement to place entire estate in trust for benefit of adult children was claim against estate that needed to be brought within time limits of nonclaim statute). Similarly, "'[t]he language of the nonclaim statute is clear, unambiguous and comprehensive. Words more significant to express every demand to which a personal representative can or ought to respond, . . . or more expressive of every liability, resting upon the decedent, could not have been employed.'" *In re Est. of Wolf*, 112 P.3d 94, 98 (Kan. 2005) (quoting 3 Samuel E. Bartlett, Kansas Probate Law and Practice § 1316 at 191 (rev. ed. 1953) (Bartlett)) (less demanding pleading requirements in civil procedure code are superseded by specific pleading requirements of nonclaim statute); *see also In re Est. of Reynolds*, 970 P.2d 537, 542 (Kan. 1998); *Union Nat. Bank & Tr. Co. v. Werning's Est.*, 665 P.2d 192, 195–96 (Kan. 1983) (declining to except from the limitations period of the nonclaim statute any claims for guardian and conservator compensation, explaining, "'Any weakening of this bar tends to bring an uncertainty into the administration of

estates.'" (quoting Richard C. Harris, *Survey of Kansas Law: Wills, Trusts, and Probate*, 27 Kan. L. Rev. 365, 372 (1979))).

This rigid application of the deadlines in the nonclaim statute is grounded in compelling policy that estates be settled promptly. The Kansas Supreme Court summarized that policy in a lengthy quote from Professor Bartlett's treatise on Kansas probate law:

> "An evident purpose of the statute is to protect the executor or administrator against stale claims and to enable him to close the estate and distribute the balance thereof without unnecessary delay. . . . When beneficiaries or heirs succeed to the estate it should be to a title freed from the encumbrance of or liability to debts. In subservience to this purpose has been the uniform construction of these statutes, and especially of the statute of nonclaim. In the absence of this statute, a settlement of an executor or administrator and the payment of legacies or distributive shares would be attended with the peril of future litigation by creditors against the beneficiaries and distributees to subject their legacies or distributive shares to the payment of debts."

*Nelson*, 205 P.3d at 730 (quoting Bartlett § 1316 at 190). This is not to ignore the policy reasons for ordinarily tolling statutes of limitations because of a legal disability (such as minority) of a potential plaintiff. But the need for closure in this particular type of litigation is exceptional.

There are also other indications that the Kansas Supreme Court would not permit tolling of the nonclaim statute's deadlines. When determining which of two apparently conflicting statutes prevails, Kansas courts use the terms *general* and *special*. "General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general

statute controlling." *In re Est. of Wolf*, 112 P.3d at 98 (internal quotation marks omitted). It is therefore significant that the Kansas Supreme Court has labeled the nonclaim statute as a "special statute of limitations," supporting this characterization with the observation that "legislatures and courts in general have thought 'it is better policy to deny exceptions to the bar of the nonclaim statute rather than to impair its final effect by allowing exceptions, however meritorious.'" *Id.* (quoting Thomas E. Atkinson, Law of Wills § 127 at 691 (2d ed. 1953)); *see also* Black's Law Dictionary 1710 (12th ed. 2024) (defining *nonclaim statute* as "A law that sets a time limit for creditors to bring claims against a decedent's estate. Unlike a statute of limitations, a nonclaim statute is usu[ally] not subject to tolling and is not waivable.").

The statutory history of the nonclaim statute further supports our view that the disability-tolling statute does not apply to the nonclaim statute. Kansas courts may examine prior versions of a statute to draw inferences about the legislature's intent. *See, e.g.*, *Hamilton v. State Farm Fire and Cas. Co.*, 953 P.2d 1027, 1032 (Kan. 1998). Before enactment of the Kansas probate code, the nonclaim statute contained a saving clause that tolled the limitations period for infants and other persons with legal disabilities. *See* 1933 Kan. Sess. Laws ch. 180, § 1 at 251 (1933) ("All demands against the estate of persons deceased not exhibited . . . within one year shall be forever barred, . . . *saving to infants, persons of unsound mind, imprisoned or absent from the United States, one year after the removal of their disabilities*." (emphasis added)). But the saving clause was removed from the nonclaim statute when Kansas established its probate code in 1939. *See* 1939 Kan. Sess. Laws ch. 180, § 215 at

Page 18

342–43 (1939). This suggests a legislative intent that the nonclaim statute functions as a strict bar without regard to a claimant's minority or other legal disability.

In addition, the Kansas Supreme Court has repeatedly cited as authoritative Professor Bartlett's treatise on Kansas probate law. Quoting an out-of-state case (with language added or modified by Professor Bartlett placed in brackets), his treatise firmly endorses the view that the limitations periods of the nonclaim statute are not tolled by disability, including minority:

> "[The statute, that claims must be filed within a prescribed time, contains no exceptions in favor of a creditor laboring under disability, and applies to infants as well as adults.] To hold that the fact of minority is a peculiar circumstance, [exempting the minor from the operation of the statute], would be equivalent to ingrafting an exception on the statute, extending the time within which creditors who are minors may file [their] claims during their minority, and thereby defeat the manifest intention of the [l]egislature in enacting the statute, which was to secure the speedy settlement of estates, and the repose of titles derived from the dead."

Bartlett § 1316 at 190–91 n.6 (quoting *Boyle v. Boyle*, 101 N.W. 748, 748 (Iowa 1905)). This view is hardly an outlier. The clear majority of jurisdictions presented with this question have concluded that their nonclaim statutes are not tolled during statutory disabilities.[6]

---

[6] *See, e.g.*, *Olson v. Est. of Rustad*, 831 N.W.2d 369, 380–81 (N.D. 2013) (following "vast majority of courts" in concluding that state statute tolling statutes of limitations during disability (including minority) does not apply to nonclaim statute); *In re Est. of Ostler*, 227 P.3d 242, 246 (Utah 2009) (nonclaim statute not tolled during claimant's minority); *In re Marriage of Epsteen*, 791 N.E.2d 175, 186 (Ill. Ct. App. 2003) (nonclaim statute contains "no exception or tolling for people with disabilities"); *In re Est. of Allen*, 843 P.2d 781, 784 (Mont. 1992) (statute tolling statutes of limitations during disability (including minority) does not apply to nonclaim statute); *In re Est. of Kennedy,* 546 N.E.2d 220, 221–22 (Ohio Ct. App. 1988) (statute tolling limitations periods for persons of unsound mind does not apply

Autumn correctly points out that the Kansas Supreme Court has recognized one circumstance in which the time limits of the nonclaim statute are not to be enforced to the letter. But that circumstance is narrowly defined. The nonclaim period is tolled when a party is "prevented from exercising his legal remedy by the pendency of legal proceedings." *In re Brasfield's Est.*, 214 P.2d 305, 313 (Kan. 1950). That is, the time limits will not be strictly enforced when the reason for the delay is that the law *prohibited* the creditors from initiating the litigation. In *Brasfield's Estate* the creditors filed a petition in probate court stating their claims against the decedent and seeking appointment of a general administrator for the estate. *See id.* at 308. The court, however, declined to appoint a general administrator on the ground that there would be no property in the estate to administer. *See id.* The district court reversed the probate court and the creditors promptly renewed their petition; but the administrator for the estate was appointed just one day less than a year after the decedent's death and the creditors were unable to exhibit their demand

---

to nonclaim statute); *Billups v. Tiernan*, 90 Cal. Rptr. 246, 248 (Cal. Ct. App. 1970) (statute tolling statutes of limitations during plaintiff's minority does not apply to nonclaim statute); *Com. Union Bank v. Gillespie*, 156 S.W.2d 425, 430 (Tenn. 1940) (nonclaim statute bars all untimely claims "whether the claims be those of nonresidents or of infants or mental incompetents"); *Davis v. Shepard*, 237 P. 21, 24 (Wash. 1925) (nonclaim statute not tolled during claimant's infancy); *Boyle*, 101 N.W. at 748 (nonclaim statute not tolled during claimant's minority because tolling would defeat "the speedy settlement of estates"); *Morgan v. Hamlet*, 113 U.S. 449, 452 (1885) (Arkansas nonclaim statute "contains no exception in favor of claimants under disability of nonage or otherwise"). *Contra Martz v. McMahon*, 129 N.W. 1049, 1050–51 (Minn. 1911) (holding nonclaim statute was tolled during claimant's minority); *Jefferys v. Tolin*, 368 S.E.2d 201, 202 (N.C. Ct. App. 1988) (same).

to the administrator within the one-year window required by the nonclaim statute at that time. *See id.*; *see also In re Jordon's Est.*, 306 P.2d 135, 137 (Kan. 1957) (summarizing and distinguishing *Brasfield's Estate*). We suspect that any court would have found a legal doctrine to protect the creditors in that case. In light of what we have already said on the subject, we are comfortable that the Kansas Supreme Court would not rely on *Brasfield's Estate* to support tolling of the nonclaim statute on behalf of Autumn.[7]

For these reasons, we conclude the Kansas Supreme Court would hold that the nonclaim statute is not tolled during a claimant's minority.[8]

### 2.     Judgment Rule

Autumn also contends that the Kansas Supreme Court ruling in *Farmers Insurance Exchange v. Schropp*, 567 P.2d 1359 (1977), precludes application of the

---

[7] Although not mentioned by Autumn, the Kansas courts have recognized one other exception to the absolute time bar of the nonclaim statute. Rather than allowing a claim that was delayed by improper *court* action, it allows a claim delayed by "fraud or other unconscionable conduct" on behalf of the *estate*, *In re Est. of Reynolds*, 970 P.2d at 543, such as when counsel for the estate conceals the death of the decedent, *see Yoh v. Hoffman*, 27 P.3d 927, 931 (Kan. Ct. App. 2001). Again, recognition of this exception is fully consistent with rejecting statutory tolling for minority or other disability and does not diminish our confidence that the Kansas Supreme Court would rule that Autumn's claim against the Estate would have been untimely under the nonclaim statute.

[8] Autumn requests, in the alternative, that we certify this tolling question to the Kansas Supreme Court for resolution. We decline to do so in light of the substantial support we find for our interpretation of the statutory scheme. "Whether to certify a question of state law to the state supreme court is within the discretion of the federal court. Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (citations omitted).

nonclaim statute in this case. That opinion, adopting what is known as the "judgment rule," held that an insured may sue its liability insurer for bad faith even when the insured is not able to pay or has not paid an excess judgment rendered against it because of such bad faith. *See id.* at 1368–69. We fail to see why the judgment rule should have any effect on the application of the nonclaim statute, or any other statute of limitations or statute of repose. None of the cases cited by Autumn supports her apparent contention that the judgment rule overrides the nonclaim statute. *See, e.g.*, *Kannaday v. Ball*, No. 12-2742-RDR, 2014 WL 117261, at *5–7 (D. Kan. Jan. 12, 2014) (neither the nonclaim statute nor the judgment rule barred a bad-faith claim against the liability insurer of the deceased tortfeasor). True, the Estate could have stated a bad-faith cause of action against Farm Bureau. But it is one thing to say that an insured alleges a cause of action against the insurer; it is quite another to say whether a claim is time-barred or subject to certain restrictions if not filed promptly.

### 3.    Federal Constitutional Arguments

Autumn argues on appeal that, as applied to her, the nonclaim statute violates both due process and equal protection under the United States Constitution. But Autumn failed to preserve these arguments in district court, thereby forfeiting them on appeal. "An issue is not preserved for appeal unless a party alerts the district court to the issue and seeks a ruling." *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1142 (10th Cir. 2009) (internal quotation marks omitted). Autumn's district-court summary-judgment brief argued that the nonclaim statute as applied to her violated "the equal protection provision of Section I of the

Kansas Constitution Bill of Rights" and "the right to remedy by due course of the law under Section 118 of the Kansas Constitution Bill of Rights." Aplt. App., Vol. VII at 1678. It made no mention, however, of equal protection or due process under the federal Constitution. Because Autumn failed to preserve below the federal constitutional arguments made on appeal, she can obtain relief on the unpreserved arguments only if she satisfies the conditions for plain-error review.[9] *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). And because she failed to argue plain error in her opening brief, she has waived the issue. *See id.* at 1131.

### 4.　　Illusory Promise Doctrine

Next, Autumn urges us to recognize consideration by applying the illusory-promise doctrine. That doctrine "instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015). In other words, we should construe promises as non-illusory when confronting ambiguous language in a contract. But we see no ambiguity with regard to the promises made in the Agreement. And we certainly see no way, nor has Autumn suggested any way, to justify inferring an additional promise that, unlike the promises expressly stated in the Agreement, was not illusory. What Autumn

---

[9] Autumn does cite on appeal several Kansas appellate decisions to support her due-process argument. But these state-court references do not renew her state-constitution arguments made below because these opinions discuss the nonclaim statute's constitutionality only under the federal Constitution, not the Kansas Constitution.

apparently wants us to do with the illusory-promise doctrine is construe the nonclaim statute so that what is not consideration would be deemed consideration. But the doctrine is a rule of contract interpretation. It does not instruct the courts on how to construe statutes or otherwise interpret the law; we have no obligation to distort the nonclaim statute or the contract doctrine of consideration to treat an illusory promise as consideration.

### 5.    Written Consideration

Autumn contends that she provided consideration because the Agreement was in writing. She relies on K.S.A. § 16-107, which states that "[a]ll contracts in writing, signed by the party bound thereby, or his authorized agent or attorney, shall import a consideration." The Kansas Supreme Court, however, has explained that this does not mean consideration "absolutely exists" if a contract is written. *Bryant*, 697 P.2d at 861 (internal quotation marks omitted). Rather, "if a contract is written the existence of consideration is presumed unless the lack of consideration is raised as an affirmative defense and is proved by substantial competent evidence." *Id.* As established above, the nonclaim statute stripped the Agreement of consideration. The presumption was fully rebutted.

### 6.    Estoppel

Finally, Autumn raises what appears to be an estoppel defense. Brad LaForge, the attorney who represented the Estate at the so-called trial of her claims against the Estate, had been retained and paid by Farm Bureau to represent the Estate in negotiating the Agreement. Autumn asserts that Mr. LaForge "removed from the

[Agreement] the estate's ability to raise defenses at the bench trial . . . [s]o the nonclaim statute was deliberately removed from the case by counsel hired by Farm Bureau." Aplt. Br. at 30. She contends that "Farm Bureau should not be allowed to argue about a defense its hired counsel removed from the case." *Id.*

Autumn's argument might have some force if it were not founded on the false premise that Mr. LaForge was acting as Farm Bureau's agent and therefore could bind it to the Agreement. Mr. LaForge, however, was retained to represent the Estate, not Farm Bureau, in negotiating the Agreement. "The mere fact an insurance company retains an attorney to represent an insured against a lawsuit does not mean the attorney is also the insurance company's attorney capable of binding the insurance company." *Bell v. Tilton*, 674 P.2d 468, 472 (Kan. 1983). The attorney's ethical duty is to the client, not the insurance company. *See Hackman v. W. Agric. Ins. Co.*, No. 104,786, 2012 WL 1524060, at *14–15 (Kan. Ct. App. Apr. 27, 2012) (recognizing the insurer's duty to "provide the insured with 'independent counsel' whose only legal responsibility is to represent the interests of the insured," as required by Kansas common law and the Kansas Rules of Professional Conduct); Restatement (Third) of the Law Governing Lawyers § 134 cmt. f (2000) ("It is clear in an insurance situation that a lawyer designated to defend the insured has a client-lawyer relationship with the insured. The insurer is not, simply by the fact that it designates a lawyer, a client of the lawyer."). That means that the attorney may, and sometimes must, do something that is in the client's interest but against the interest of the insurer. It would make no sense to say that the insurer is bound by such action

**Page 25**

and cannot dispute it later. Mr. LaForge's actions in negotiating the Agreement are not imputed to Farm Bureau; therefore, Farm Bureau cannot be estopped from relying on the nonclaim-statute defense.[10]

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order dismissing this case for lack of subject-matter jurisdiction.

---

[10] We do not address Farm Bureau's alternative arguments supporting summary judgment because we hold that the Agreement is not supported by consideration and therefore Autumn does not have standing.